CARSON, COMMISSIONER OF FINANCE & TAXA-
TION, *v.* ROANE-ANDERSON COMPANY ET AL.

NO., 186.

Argued December 5, 1951.—Decided January 7, 1952.

*Allison B. Humphreys, Jr.,* Assistant Attorney General
of Tennessee, argued the cause for petitioner. With him
on the briefs were *Roy H. Beeler,* Attorney General, and
*William F. Barry,* Solicitor General.

*Oscar H..Davis* argued the cause for the United States, respondent. With him on the brief were *Solicitor General Perlman, Acting Assistant Attorney General Slack* and *Berryman Green.*

*S. Frank Fowler* submitted on brief for respondents.

*Smith Troy,* Attorney General, and *C. John Newlands,* Assistant Attorney General, filed a brief for the State of Washington, as *amicus curiae,* urging reversal.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

The Retailers' Sales Tax Act of Tennessee, Tenn. Acts 1947, c. 3, imposes a sales tax on the sale of goods in Tennessee and a use tax on the use within the state of goods purchased elsewhere. Tennessee collected these taxes from respondents who paid them under protest and then brought these suits to recover them and to enjoin future collections. Two of the respondents are private companies who are contractors for the Atomic Energy Commission and who paid use taxes; two are merchants who paid sales taxes on sales to those contractors and who passed the taxes on to them. The use taxes and the sales taxes were on articles used by the contractors in the performance of their contracts with the Commission.

The Tennessee Supreme Court held by a divided vote (192 Tenn. 150, 239 S. W. 2d 27) that the challenged taxes, though not forbidden by the Constitution, were prohibited by § 9 (b) of the Atomic Energy Act of 1946, 60 Stat. 765, 42 U. S. C. § 1809 (b). The cases are here on certiorari. 342 U. S. 847.

Sec. 9 (b) provides in part that "The Commission, and the property, activities, and income of the Commission, are hereby expressly exempted from taxation in any manner or form by any State, county, municipality, or any subdivision thereof." The constitutional power of

Congress to protect any of its agencies from state taxation (*Pittman* v. *Home Owners' Corporation,* 308 U. S. 21; *Federal Land Bank* v. *Bismarck Co.,* 314 U. S. 95) has long been recognized as applying to those with whom it has made authorized contracts. See *Thomson* v. *Pacific R. Co.,* 9 Wall. 579, 588–589; *James* v. *Dravo Contracting Co.,* 302 U. S. 134, 160–161. Certainly the policy behind the power of Congress to create tax immunities does not turn on the nature of the agency doing the work of the Government. The power stems from the power to preserve and protect functions validly authorized (*Pittman* v. *Home Owners' Corp., supra,* p. 33)—the power to make all laws necessary and proper for carrying into execution the powers vested in the Congress. U. S. Const., Art. I, § 8, cl. 18. Hence if the present contracts which the respondent contractors have with the United States, and the performance thereunder, are "activities" within the meaning of § 9 (b) of the Act, the immunity is clear. Our view is that they are and that the judgments below must be affirmed.

Respondent Roane-Anderson manages the government-owned town of Oak Ridge, Tennessee; Carbide and Carbon Chemicals operates the Oak Ridge plants for the production of fissionable materials. Their contracts antedate the Atomic Energy Act of 1946, having been originally entered into with the Manhattan District of the Corps of Engineers. Pursuant to § 9 (a) of the Act these contracts were transferred by Executive Order[1] to the Commission. The question whether the Commission should be empowered to employ private contractors in performance of its functions or whether the Commission should itself be the entrepreneur was an issue of national policy much discussed and debated at the time the legislation was before the Congress. One

---

[1] Executive Order No. 9816, Dec. 31, 1946, 12 Fed. Reg. 37.

measure, which had the backing of the War Department, would have authorized the Commission to lean heavily on private enterprise for performance of its functions.[2] Another measure, originating in the Senate and after extensive revisions becoming the Atomic Energy Act of 1946, contained no provision authorizing the use of contractors to the extent here involved, required the Commission to produce its own fissionable materials in its own plants by its own employees, and directed the Commission to terminate contracts previously made for the production of fissionable materials.[3] But that bill was materially altered so as to adopt as the national policy the use of "management contracts for the operation of Government-owned plants so as to gain the full advantage of the skill and experience of American industry." [4] Accordingly § 4 (c) (2) of the Act authorizes the Commission "to make, or to continue in effect, contracts with persons obligating them to produce fissionable material in facilities owned by the Commission." And § 9 (a) authorizes the transfer to the Commission of all contracts concerning the production of fissionable material. The use of private contractors is therefore one of the ways in which the Commission is authorized to man-. age its affairs. Its activities may, in other words, be performed by it directly or through the agencies of private enterprise.

Congress uses the word "activities" in various sections of the Act, and seems each time to give it a broad sweep. The Congressional or Joint Committee constituted under § 15 is directed to study "the activities" of the Commission. The reports which the Commission is directed to submit to Congress pursuant to § 17 concern its "activi-

---

[2] See H. R. Rep. No. 1186, 79th Cong., 1st Sess.

[3] See S. 1717 reprinted in Hearings before the Senate Special Committee on Atomic Energy, 79th Cong., 2d Sess., pp. 1–9.

[4] S. Rep. No. 1211, 79th Cong., 2d Sess., p. 15.

ties." Section 9 (b) authorizes the Commission to make payments to state and local governments in lieu of property taxes in those areas "in which the activities of the Commission are carried on and in which the Commission has acquired property" previously subject to local taxation. In none of these sections do we find any suggestion that "activities" is used in a narrow sense to describe less than all of the functions of the Commission. The meaning of "activities" as applied either to an individual or to a government agency may be broad enough to include what is done through independent contractors as well as through agents. Certainly where the pattern of conduct visualized by the Act is the use of independent contractors or agents from the field of private enterprise, the inference is strong that "activities" means all authorized methods of performing the governmental function. We find no contrary evidence from the legislative history.

In view of this conclusion we find it unnecessary to reach the problems of implied constitutional immunity involved in *James* v. *Dravo Contracting Co., supra,* and *Alabama* v. *King & Boozer,* 314 U. S. 1.

*Affirmed.*

MR. JUSTICE BLACK took no part in the consideration or decision of this case.