17590

E-G SHEET METAL WORKS, Respondent v. James W. CRAIN, James A. Calhoun, Jr., Otis W. Livingston, Francis M. Pinckney and James H. Sullivan, constituting the South Carolina Tax Commission, Appellants

(111 S. E. (2d) 562)

Messrs. *Daniel R. McLeod, Attorney General,* and *James M. Windham, Assistant Attorney General,* of Columbia, *for Appellants,*

Messrs. *Fulmer & Barnes* and *Edward A. Harter, Jr.,* of Columbia, *for Respondent,*

December 7, 1959.

OXNER, Justice.

This action was brought under the provisions of Section 65-1467 of the 1952 Code by respondent, E-G Sheet Metal Works, against the members of the South Carolina Tax Commission to recover sales and use taxes in the sum of $2,831.60, together with interest of $64.27, which respondent paid under protest. The case was referred to the Master for Richland County who heard it upon an agreed statement of facts. He concluded that the taxes were wrongfully collected and should be refunded. His report was affirmed by the Circuit Court. This appeal by the Tax Commission followed.

During 1950 the United States, through the agency of the Atomic Energy Commission, entered into a contract with E. I. du Pont de Nemours & Company for the construction of a plant in Aiken, Barnwell and Allendale Counties, South Carolina, for the production of nuclear and related materials. This facility of the United States, commonly known as the Savannah River Plant, was to be constructed under the supervision of the Commission. Du Pont was to be reimbursed for all its costs and expenses in connection with the project and for its services was to receive only a nominal fee of $1.00. Under the terms of the contract, the title to all materials, equipment and supplies procured by du Pont under the contract was to vest in the Government whenever title passed from the vendor. Du Pont was authorized, with

the approval of the Commission, to enter into sub-contracts for any part of the work.

Respondent is a partnership, with its home office in New Jersey, engaged in the business of processing, fabricating and installing sheet metal articles and products. It submitted a bid to furnish the materials (not furnished by du Pont) and labor for all sheet metal duct work and casings needed for the heating and air conditioning of the buildings at the Savannah River Project and to erect a central fabrication shop on the site. The bid was accepted by du Pont and after approval by the Atomic Energy Commission, a formal contract was entered into between du Pont and respondent in March of 1952. The estimated cost of the work to be performed under the contract was $1,585,121.00, based on unit prices set forth in the bid. Shortly thereafter respondent commenced work.

The controversy in this case relates to the liability of respondent for sales and use taxes on various materials, equipment and supplies purchased by it in the performance of its contract. Appellants have never contested the immunity of respondent from taxes on articles of tangible personal property purchased by it to which title became vested in the United States or du Pont. Use and sales taxes were collected only on those materials and supplies to which title remained in respondent and was never vested in du Pont or the United States and which were never incorporated into the project. The equipment and supplies upon which the taxes were collected varied, ranging from automobiles, trucks and other substantial articles to such small items as stationery and toothpicks. Some of these supplies were consumed in the performance of the contract. The record does not disclose what was later done by respondent with the automobiles, trucks and other heavy equipment.

Respondent's claim of immunity is based on two grounds: (1) implied constitutional immunity. (2) Section 9(b) of the Atomic Energy Act of 1946, 60 Stat. 765, 42 U. S.

C. § 1809(b), 42 U. S. C. A. § 1809(b), which provides in part:

"The Commission, and the property, activities, and income of the Commission, are hereby expressly exempted from taxation in any manner or form by any State, county, municipality, or any subdivision thereof."

Both of the foregoing grounds were sustained by the Court below. We shall first discuss the question of implied constitutional immunity.

Since the landmark case of *M'Culloch v. State of Maryland,* 4 Wheat. 316, 4 L. Ed. 579, it has been well established that the Federal Government and its agencies, instrumentalities and property are immune from state and local taxation. In the course of time this immunity was extended to the income or property or transactions of others because they in some manner dealt with or acted for the Government. But, as stated by Mr. Justice Jackson in *United States v. Allegheny County,* 322 U. S. 174, 64 S. Ct. 908, 911, 88 L. Ed. 1209 "in recent years this Court has curtailed sharply the doctrine of implied delegated immunity." In some of the early cases attempts to tax Federal property were stricken down on an "economic burden test", that is, if the economic burden of the tax fell on the Federal Government, the tax was invalid. Later this test was discarded. *James v. Dravo Contracting Co.,* 302 U. S. 134, 58 S. Ct. 208, 82 L. Ed. 155; *State of Alabama v. King & Boozer,* 314 U. S. 1, 62 S. Ct. 43, 86 L. Ed. 3. The Court then developed the "legal incidence" test and it is now generally held that implied immunity only encompasses taxation having a legal incidence on the Federal Government, its agencies or instrumentalities, and therefore does not encompass taxation merely because the ultimate economic burden may fall on the Government. In *United States v. Allegheny County, supra,* the Court said, 322 U. S. 174, 64 S. Ct. 915: "The fact that materials are destined to be furnished to the Government does not exempt them from sales taxes imposed on the contractor's vendor."

In *James v. Dravo Contracting Co., supra,* 302 U. S. 134, 58 S. Ct. 208, 82 L. Ed. 155, the Court held that West Virginia could impose its gross receipts tax on payments made by the United States to a contractor engaged in building locks and dams for the Government. Mr. Chief Justice Hughes, speaking for a majority of the Court, pointed out that the tax was not laid upon the contract, the Government, its property or its instrumentalities, but on an independent contractor and thus constituted no direct burden on the Government. In *Silas Mason Company v. Tax Commission,* 302 U. S. 186, 58 S. Ct. 233, 82 L. Ed. 187, the Court held that the State of Washington could enforce its occupation tax against a contractor engaged in the construction of Grand Coulee Dam. The tax was measured by the gross income received by such contractor.

We now come to two decisions which we think are decisive of the question now under discussion. In *State of Alabama v. King & Boozer, supra,* 314 U. S. 1, 62 S. Ct. 43, 86 L. Ed. 3, the Court sustained Alabama's sales tax on lumber sold to a contractor for use in the construction of an army camp for the United States. The contract with the Government was on a cost-plus-fee basis. It provided that the title to the materials would pass to the Government on delivery and the Government was to reimburse the contractor for specified expenses, including all expenditures for supplies and materials and state or local taxes which the contractor was required to pay. The tax was laid on the seller but by its terms required to be passed on to the purchaser. The Court pointed out that the purchases were by the contractor and not by the Government although the burden of the tax was ultimately to be borne by the Government. In upholding the tax the Court applied the legal incidence test. In the companion case of *Curry v. United States,* 314 U. S. 14, 62 S. Ct. 48, 49, 86 L. Ed. 9, the Court sustained Alabama's tax upon contractors on their use or consumption of roofing purchased outside of the State of Alabama but shipped into that State and used in the con-

struction of the same army camp mentioned in King & Boozer. The Court said: "The Constitution, without implementation by Congressional legislation, does not prohibit a tax upon Government contractors because its burden is passed on economically by the terms of the contract or otherwise as a part of the construction cost to the Government."

There is no distinction in principle between the instant case and the *King & Boozer* and *Curry* cases. Here respondent was the purchaser and not du Pont or the Atomic Energy Commission. The legal incidence of the tax fell upon respondent and not the United States. There is no implied constitutional immunity from taxation on respondent's own property or its profits or purchases. Respondent is asserting an immunity which, as will be hereinafter shown, the Government disclaims.

Apparently realizing the difficulty of distinguishing King & Boozer and Curry, respondent says that these cases were in effect overruled by *Kern-Limerick, Inc. v. Scurlock,* 347 U. S. 110, 74 S. Ct. 403, 411, 98 L. Ed. 546. We do not think so. In that case the Court held that Arkansas could not collect its gross receipts tax on the sale of tractors for use by a private contractor in the construction for the United States of a naval ammunition depot. By the terms of the contract, the United States agreed to reimburse the contractor for any State taxes it was required to pay and for all materials purchased. The purchase orders disclosed that the contractor became the purchasing agent for the United States with title to the materials and equipment passing directly from the vendor to the United States. The Court pointed out that the distinguishing feature between King & Boozer and Kern was that in the latter case the Government was the purchaser and no liability rested upon the purchasing agent. It said that King & Boozer was not "controlling for, though the Government also bore the economic burden of the state tax in that case, the legal incidence of that tax was held to fall on the independent contractor and not on the United States."

The general principles laid down in Dravo and King & Boozer were followed, and perhaps extended, in several recent cases. *United States v. City of Detroit,* 355 U. S. 466, 78 S. Ct. 474, 2 L. Ed. (2d) 424; *United States v. Township of Muskegon,* 355 U. S. 484, 78 S. Ct. 483, 2 L. Ed. (2d) 436; *City of Detroit v. Murray Corporation,* 355 U. S. 489, 78 S. Ct. 458, 2 L. Ed. (2d) 441.

Of interest is the decision of a three judge federal court in *United States of America v. Livingston,* D. C., . . . . F. Supp. . . . . . It was there held under the doctrine of implied constitutional immunity that materials and supplies purchased and used by du Pont at the Savannah River Plant were not subject to South Carolina sales and use taxes. The Court concluded that du Pont was acting as the "alter ego" of the Atomic Energy Commission and that purchases made by du Pont were those of the United States to which title passed directly from the vendor. This factual situation does not exist in the instant case.

We conclude that the purchases made by respondent upon which the sales and use taxes in controversy were imposed enjoyed no constitutional implied immunity.

The question of whether by Section 9(b) of the Atomic Energy Act of 1946 respondent has been immunized from these taxes is a more difficult one. The exemption created by the last sentence of this section was deleted by Congress in 1953, Act Aug. 13, 1953, 67 Stat. 575. However, the amendment provided that it should be effective only as to tax liabilities accruing after October 1, 1953. The taxes in controversy were imposed on items purchased before that date. Hence the 1953 amendment has no application.

Appellants apparently concede that Congress has the power to extend immunity from taxation beyond the limits of that to be implied from the Supremacy Clause of the Constitution, Art. 6. Their position is that they have not sought

to impose any taxes on "the property, activities, and income of the Commission." Respondent contends, and the Court below so held, that the contract which it had with du Pont, and the performance thereunder, are "activities" within the meaning of Section 9(b).

The contract between respondent and du Pont contains the following provision with reference to taxes: "The prices listed herein do not include any State or local sales or use taxes as any work performed or materials purchased as the result of this subcontract are exempted from such taxes."

However, it appears that neither the exemption contained in Section 9(b) of the Atomic Energy Act of 1946 nor the quoted contractual provision was ever construed by the Atomic Energy Commission as applying to sales and use taxes on tangible personal property to which the Commission never acquired title and which was never incorporated into the project. In a bulletin issued by the Commission in Washington with reference to exemption from state and local taxation by virtue of Section 9(b), it was stated that exemption should not be sought with reference to: "Use taxes on tangible personal property which remains the property of the contractor; Sales taxes on tangible personal property purchased by the contractor which remains his property, whether or not required by law to be passed on to the purchaser."

In line with the foregoing bulletin the manager of the Savannah River Project gave the following opinion:

"The exemption is applicable to tangible personal property purchased by contractors and subcontractors if the property is physically incorporated into the project or otherwise becomes property of the Atomic Energy Commission; it is *not* applicable to tangible personal property so purchased if title to the property remains in the contractor or subcontractor or if the property is consumed without prior passage of title to the Commission."

The exemption contained in Section 9 (b) was first before the Supreme Court in *Carson v. Roane-Anderson Co.,*

342 U. S. 232, 72 S. Ct. 257, 96 L. Ed. 257, a case strongly relied on by respondent. It was there held that purchases made by several contractors engaged in the maintenance and operation of certain facilities of the Atomic Energy Commission were exempt under Section 9(b) from Tennessee's sales and use tax. One of the contractors managed the government-owned town of Oak Ridge, Tennessee, performing the normal municipal functions and services. Another operated the Oak Ridge plants for the production of fissionable materials. The decision of the Tennessee Court, 192 Tenn. 150, 239 S. W. (2d) 27, which was affirmed by the Supreme Court, shows that the contractors were performing essential activities of the Commission. Title to all articles purchased by them became immediately vested in the Government. They were in effect agencies of the Atomic Energy Commission, performing normal functions in the administration of its affairs. The United States Supreme Court said, 342 U. S. 232, 72 S. Ct. 259: "The use of private contractors is therefore one of the ways in which the Commission is authorized to manage its affairs. Its activities may, in other words, be performed by it directly or through the agencies of private enterprise."

We think the factual situation in the instant case is quite dissimilar. Title to property purchased by respondent on which the taxes in controversy were imposed never passed to du Pont or the Commission, nor did either ever assume any liability for payment. These articles and supplies were never incorporated into the plant. Respondent was not discharging an ordinary function of the Commission. It was not managing the Commission's affairs but was engaged in construction work as a private organization for profit. We do not think that Section 9 (b) contemplated that every person, firm or corporation who might do business with du Pont or who might have some part, however, remote, in the construction of the Savannah River Project should be exempt from taxation. If respondent is exempt, are the purchases made by those who did business with it exempt? Does

the exemption extend to all those who sold merchandise which in some manner was ultimately consumed or used in the construction of the project? Adoption of respondent's construction would lead to a rather unreasonable result.

In the *Carson case* the Government was permitted to intervene and assert immunity. Had the taxes been upheld in that case, doubtless the Government would have had to pay them. In the instant case, there is no claim of immunity by the Government and it is conceded that if there is any liability for the tax in controversy, it rests solely upon respondent.

Neither do we think the instant case is controlled by *General Electric Co. v. State of Washington,* 347 U. S. 909, 74 S. Ct. 474, 98 L. Ed. 1066. In that case the General Electric Company was engaged in manufacturing fissionable material for the Atomic Energy Commission at Hanford, Washington, using facilities owner by the United States and expending Government money in a manner directed by the Commission. Here again there was a private contractor carrying on one of the Commission's activities for a nominal fee of $1.00. The Supreme Court of Washington held, however, that the General Electric Company was subject to the business and occupation tax of that State. 42 Wash. (2d) 417, 256 P. (2d) 265. The United States Supreme Court, on the authority of the *Carson case,* reversed. The distinction heretofore pointed out between the instant case and the *Carson case* equally applies to this case.

Our conclusion that the immunity from state taxation under Section 9(b) does not encompass the activities of respondent in purchasing materials and supplies which were not incorporated in the project is fortified by the construction given this statute by the Atomic Energy Commission. Its interpretation is entitled to great weight. *United States v. Zucca,* 351 U. S. 91, 76 S. Ct. 671, 100 L. Ed. 964; *County of Marin v. United States,* 356 U. S. 412, 78 S. Ct. 880, 2 L. Ed. (2d) 879.

In conclusion it should be stated that we have carefully considered the recent case of *Reynolds Electrical & Engineering Co. v. Lujan,* 64 N. M. 43, 323 P. (2d) 890, which held that purchases made by a sub-contractor in the construction of buildings and facilities for the Atomic Energy Commission at its Los Alamos plant were exempt under Section 9(b) from New Mexico's sales and use taxes. The facts are meagerly stated. It does not appear whether the materials purchased actually went into the buildings or where title was vested. But if this case goes to the extent contended by respondent, we would not be inclined to follow it.

The order of the Circuit Court is reversed and the case remanded for entry of judgment in favor of appellants.

STUKES, C. J., and TAYLOR, LEGGE and Moss, JJ., concur.