326 F.2d 929
 UNITED STATES of America and Captain Harold S. Bottomley,
Jr., U.S.N., Appellants,
v.
ARLINGTON COUNTY, COMMONWEALTH OF VIRGINIA, and George D.
Sisher, Arlington County Commissioner of Revenue, Appellees.
 No. 9126.
 United States Court of Appeals Fourth Circuit.
 Argued Nov. 13, 1963.
Decided Jan. 10, 1964.
 
 William Massar, Atty., Dept. of Justice, (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and I. Henry Kutz, Attys., Dept. of Justice, Claude V. Spratley, Jr., U.S. Atty., and MacDougal Rice, Asst. U.S. Atty., on the brief) for appellants.
 Peter J. Kostik, Asst. Commonwealth's Atty., for Arlington County, Virginia (William J. Hassan, Commonwealth's Atty., for Arlington County, Virginia, on the brief), for appellees.
 Before BRYAN and J. SPENCER BELL, Circuit Judges, and CRAVEN, District judge.
 J. SPENCER BELL, Circuit Judge:
 
 
 1
 The United States Government and one Harold S. Bottomley, Jr., an officer in the U.S. Navy, brought this action against Arlington County, Virginia, and George D. Fisher, Commissioner of Revenue for the County, seeking a judgment declaring a personal property tax assessed against Bottomley for the year 1960 to be in contravention of Section 514 of the Soldiers' and Sailors' Civil Relief Act of 1940[1] and to restrain the collection of the tax against him and all other members of the armed forces similarly situated.
 
 
 2
 The facts as stipulated by the parties and found by the district court reveal that Bottomley, a Naval officer, then domiciled in New Jersey, was living with his family in Arlington, Virginia. On January 4, 1959, he was assigned to sea duty outside of Virginia and New Jersey. He left his family and personal property in Arlington until June 1960, when both were removed to the West Coast. For the year 1960, Arlington County assessed Bottomley $121.80 on his personal property which was physically present in the county on tax day of that year, which was January 1st. It is conceded that the Act prohibited Arlington County from taxing Bottomley's personal property while he was residing in Virginia.
 
 
 3
 The defendants moved to dismiss in the district court for lack of jurisdiction, and while the question was not stressed in the briefs or raised in the oral arguments, we think it must be met.
 
 
 4
 The fact that the United States is not subject to the limitations of28 U.S.C. 1341 prohibiting the district court from enjoining the collection of state taxes has long since been settled where the United States has in fact a proprietary interest. United States v. Livingston, 179 F.Supp. 9 (E.D.S.C.1959), aff'd, 364 U.S. 281, 80 S.Ct. 1611, 4 L.Ed.2d 1719 (1960). See the authorities therein cited by Judge Haynsworth in support of the decision of the three judge district court.
 
 
 5
 We must, however, face an additional question in this action. Does the allegation of the complaint that the United States brings this action on behalf of Bottomley and other servicemen in order to obtain a proper implementation of the governmental policy involved in the Soldiers' and Sailors' Relief Act give the Government standing to bring this action? We think the answer to this question must be yes. The special interest of the sovereign United States in the protection and enforcement of its policies and programs with respect to the members of the armed forces has been affirmed by the courts in numerous instances.
 
 
 6
 In Dameron v. Brodhead, 345 U.S. 322, 73 S.Ct. 721, 97 L.Ed. 1041 (1953), the Court upheld the constitutionality of the Act. In doing so it said:
 
 
 7
 'The constitutionality of federal legislation exempting servicemen from the substantial burdens of seriate taxation by the states in which they may be required to be present by virtue of their service, cannot be doubted. Generally similar relief has often been accorded other types of federal operations or functions. And we have upheld the validity of such enactments, even when they reach beyond the activities of federal agencies and corporations to private parties who have seen fit to contract to carry on functions of the Federal Government. Carson v. Roane-Anderson Co., 342 U.S. 232 (72 S.Ct. 257, 96 L.Ed. 257), and cases cited; cf. James v. Dravo Contracting Co., 302 U.S. 134, 160-661 (58 S.Ct. 208, 82 L.Ed. 155).
 
 
 8
 'Nor do we see any distinction between those cases and this. Surely, respondent may not rely on the fact that petitioner here is not a business contractor. He is not the less engaged in a function of the Federal Government merely because his relationship is not entirely economic. We have, in fact, generally recognized the especial burdens of required service with the armed forces in discussing the compensating benefits Congress provides. Le Maistre v. Leffers, 333 U.S. 1 (68 S.Ct. 371, 92 L.Ed. 429); Boone v. Lightner, 319 U.S. 561 (63 S.Ct. 1223, 87 L.Ed. 1587); Cf. Board of Commissioner's v. Seber, 318 U.S. 705 (63 S.Ct. 920, 87 L.Ed. 1094). Petitioner's duties are directly related to an activity which the Constitution delegated to the National Government, that 'to declare War,' U.S.Const., Art I, 8, cl. 11, and 'to raise and support Armies.' Ibid., cl. 12. Since this is so, congressional exercise of a 'necessary and proper' supplementary power such as this statute must be upheld. Pittman v. Home Owners' Corp., 308 U.S. 21, 32-33 (60 S.Ct. 15, 84 L.Ed. 11); Federal Land Bank v. Bismarck Co., 314 U.S. 95, 102-04 (62 S.Ct. 1, 86 L.Ed. 65). Carson v. Roane-Anderson Co., supra, (342 U.S.) at 234 (72 S.Ct. at 258, 96 L.Ed. 257). What has been said in no way affects the reserved powers of the states to tax. For this statute merely states that the taxable domicile of servicemen shall not be changed by military assignments. This we think is within the federal power.' 345 U.S. at 324-25, 73 S.Ct. at 723, 97 L.Ed. 1041.
 
 
 9
 The right of the federal government to bring suit to enforce its policies and programs even in the absence of immediate pecuniary interest has been upheld in numerous other fields of federal activity. In In re Debs, 158 U.S. 564, 584, 15 S.Ct. 900, 906, 39 L.Ed. 1092 (1895), where the Government sought an injunction against private persons in connection with the Chicago railroad strike, the Court said:
 
 
 10
 'We do not care to place our decision upon this ground alone (i.e., proprietary interest in the mail). Every government, entrusted, by the very terms of its being, with powers and duties to be exercised and discharged for the general welfare, has a right to apply to its own courts for any proper assistance in the exercise of the one and the discharge of the other, and it is no sufficient answer to its appeal to one of those courts that it has no pecuniary interest in the matter. The obligation which it is under to promote the interest of all, and to prevent the wrongdoing of one resulting in injury to the general welfare, is often of itself sufficient to give it a standing in court.'
 
 
 11
 Cf. United States v. City of Jackson, 318 F.2d 1 (5 Cir. 1963); United States v. Lassiter, 203 F.Supp. 20 (W.D.La.), aff'd, 371 U.S. 10, 83 S.Ct. 21, 9 L.Ed.2d 47 (1962). In United States v. San Jacinto Tin Co.,125 U.S. 273, 8 S.Ct. 850, 31 L.Ed. 747 (1888), the Court upheld the right of the Attorney General to bring suit to set aside a land patent obtained by fraud. This was in the absence of any statutory authority. In United States v. American Bell Tel. Co., 128 U.S. 315, 9 S.Ct. 90, 32 L.Ed. 450 (1888), the Court upheld the right to bring suit to cancel a patent again without statutory authority. Here we find that the interest of the national government in the proper implementation of its policies and programs involving the national defense is such as to vest in it the non-statutory right to maintain this action. Under these circumstances the incapacity of the individual plaintiff to maintain his action is immaterial since he may find shelter under the Government's umbrella.
 
 
 12
 The County contends that his personal property ceased to be exempt from taxation when he was transferred pursuant to military orders to a post outside Virginia, but elected to leave his family and personal property in Arlington County for approximately a year and a half after the transfer. The district court agreed, and in so doing we think it read into the Act a limitation which is not there. In its opinion the court said:
 
 
 13
 'Under (these) circumstances the personal property in question did not remain in Virginia by virtue of Captain Bottomley's military orders, and it is subject to the same personal property taxes as other personal property located in Virginia as of January 1, 1960.'
 
 
 14
 As we read the Act it says that the serviceman shall not be deemed to have lost his residence or domicile in his 'home' state if he is absent therefrom solely in compliance with military orders. The Act then adds: with respect to taxation of such person's personal property that property shall not be deemed to be present in or to have a situs for taxation in such state; i.e., in a state in which he is deemed not to reside or be domiciled.
 
 
 15
 To put the matter in another way, the Act does not say that the serviceman shall not be deemed to have acquired a domicile in the host state because he was there by virtue of military orders-- it says he shall not be deemed to have lost his domicile in his 'home' state, and the Act further states that the same condition shall exist with respect to his personalty. Thus we think the Act makes it clear that the Congress intended to exempt the serviceman from taxation on his personal property except by his 'home' state. This is the rational conclusion to be drawn from Dameron v. Brodhead, 345 U.S. 322, 73 S.Ct. 721, 97 L.Ed. 1041 (1953), where the Supreme Court rejected an attempt by the host state to tax a serviceman's personalty because his 'home' state did not. The argument there being that the purpose of the Act was to prevent multiple taxation and since the 'home' state did not tax, the host state was free to do so. In rejecting the argument the Court said:
 
 
 16
 'In fact, though the evils of potential multiple taxation may have given rise to this provision, Congress appears to have chosen the broader technique of the statute carefully, freeing servicemen from both income and property taxes imposed by any state by virtue of their presence there as a result of military orders. It saved the sole right of taxation to the state of original residence whether or not that state exercised the right.' 345 U.S. at 326, 73 S.Ct. at 724, 97 L.Ed. 1041
 
 
 17
 On October 9, 1962, while this case was pending, the Congress amended the Act to provide that regardless of where the owner may be serving, his personal property may not be taxed except in his home state. Legislative history states that the change was made in order to clarify the original intent of the Act that only the 'home' state should have the right to tax.[2] We do not need the change to read the Act as prohibiting the tax in question. The judgment is, therefore, reversed with directions to the court to enter judgment in conformity with this opinion.
 
 
 18
 Reversed and remanded.
 
 
 
 [1]
 '(1) For the purpose of taxation in respect of any person, or of his personal property, income, or gross income, by any State, Territory, possession, or political subdivision of any of the foregoing, or by the District of Columbia, such person shall not be deemed to have lost a residence or domicile in any State, Territory, possession, or political subdivision of any of the foregoing, or in the District of Columbia, solely by reason of being absent therefrom in compliance with military or neval orders, or to have acquired a residence or domicile in, or to have become resident in or a resident of, any other State, Territory, possession, or political subdivision of any of the foregoing, or the District of Columbia, while, and solely by reason of being, so absent. For the purposes of taxation in respect of the personal property, income, or gross income of any such person by any State, Territory, possession, or political subdivision of any of the foregoing, or the District of Columbia, of which such person is not a resident or in which he is not domiciled, compensation for military or naval service shall not be deemed income for services performed within, or from sources within, such State, Territory, possession, political subdivision, or District, and personal property shall not be deemed to be located or present in or to have a situs for taxation in such State, Territory, possession, or political subdivision, or district: Provided, That nothing contained in this section shall prevent taxation by any State, Territory, possession, or political subdivision of any of the foregoing, or the District of Columbia in respect of personal property used in or arising from a trade or business, if it otherwise has jurisdiction. This section shall be effective as of September 8, 1939, except that it shall not require the crediting or refunding of any tax paid prior to October 6, 1942
 '(2) When used in this section, (a) the term 'personal property' shall include tangible and intangible property (including motor vehicles), and (b) the term 'taxation' shall include but not be limited to licenses, fees, or excises imposed in respect to motor vehicles or the use thereof: Provided, That the license, fee, or excise required by the State, Territory, possession, or District of Columbia of which the person is a resident or in which he is domiciled has been paid.' 50 U.S.C.App.1958 ed., Sec. 574.
 
 
 [2]
 S.Rep. No. 2182, 87th Cong., 2d Sess. 1-2 (1962), accompanying H.R. 9749, U.S. Code Congressional and Administrative News 1962, p. 2841