UNITED STATES of America, Plaintiff-Appellant and Cross-Appellee,

v.

STATE OF NEW MEXICO, Bureau of Revenue of the State of New Mexico, and Fred L. O'Cheskey, as Commissioner of Revenue of and for the State of New Mexico and his successors in office, Defendants-Appellees and Cross-Appellants.

Nos. 76–1888, 76–1889.

United States Court of Appeals, Tenth Circuit.

Argued Jan. 27, 1978.

Decided Aug. 7, 1978.

Ann B. Durney, Appellate Section, Tax Division, Dept. of Justice, Washington, D. C. (Myron C. Baum, Acting Asst. Atty. Gen., Gilbert E. Andrews and Donald R. Anderson, Tax Division, Dept. of Justice, Washington, D. C., and Victor R. Ortega, U. S. Atty., Albuquerque, N. M., with her on brief), for plaintiff-appellant and cross-appellee.

Daniel H. Friedman, Bureau of Revenue, Santa Fe, N. M. (Jan E. Unna, Sp. Asst. Atty. Gen. and Toney Anaya, Atty. Gen. of New Mexico, Santa Fe, N. M., with him on briefs), for defendants-appellees and cross-appellants.

Before McWILLIAMS, BARRETT and McKAY, Circuit Judges.

McKAY, Circuit Judge.

Lockheed Electronics Company (Lockheed) and RCA Service Company (RCA) (collectively referred to as "contractors") had cost-plus contracts with the United States for the performance of research and development services at the White Sands Missile Range in New Mexico. Because state and local taxes were included in the definition of reimbursable costs in the contracts, the cost to the United States was increased by the amount of New Mexico's gross receipts and compensating taxes which were imposed on the contractors. The contractors disputed the imposition of the gross receipts tax so far as it applied to general and administrative (G&A) expenses and to materials and equipment purchased by the contractors in New Mexico. They also contested the imposition of the compensating tax for reimbursable out-of-state purchases of property.

New Mexico refused to permit the United States to intervene in the state administrative contest. The United States then instituted this action seeking a declaratory judgment that the Constitution and laws of the United States and the laws of New Mexico prohibit the application of the provisions of the New Mexico Gross Receipts and Compensating Tax Act (N.M.Stat.Ann. §§ 72–16A–1 to –19 (Supp.1975)) (the Act) to the receipts of Lockheed and RCA under their respective contracts with the United States.

The three judge panel to which the case was assigned concluded that a judgment by the panel was not required, leaving the decision to the district judge. The district judge declared that New Mexico has the right to assess and collect gross receipts and compensating taxes against amounts reimbursed by the United States for tangible personal property purchased by Lockheed and RCA to enable them to perform the services specified in their contracts, but that New Mexico is not entitled to assess its gross receipts tax against reimbursements for G&A "services" performed by the contractors outside New Mexico. Both the United States and New Mexico appealed.

According to the stipulated facts, each written agreement between the United States and a contractor required that the contractor act "as an independent contractor and not as an agent of the government" and that no employer-employee or master-servant relationship would exist between the United States and the contractor. Each contract further contained a government property clause which provided that "[t]itle to all property purchased by the Contractor, for the cost of which the Contractor is entitled to be reimbursed as a direct item of cost under this contract, shall pass to and vest in the Government upon delivery of such property by the vendor." Record, vol. 1, at 48.

Pursuant to provisions of the Armed Service Procurement Regulations, which were included by reference in the contracts, the contractors were required, where possible, to utilize government owned property. See 32 CFR § 7–203.21 (1976). Before purchasing any materials, supplies or equipment from a commercial vendor, the contractors were required to resort to all government sources including the "country store" (a local outlet containing miscellaneous supplies and materials) and MILSTRIP (a nation-wide computerized purchasing program). Available government owned property was provided to the contractors free of

charge. If a contractor was unable to obtain government owned property and the Contracting Officer (a Civil Service employee of the Department of the Army who acts as the representative of the United States and is authorized to execute contracts on behalf of the United States) and other appropriate government officials approved, the contractor could purchase supplies from private vendors under General Services Administration (GSA) federal supply schedule contracts at preferred rates. The purchase requisitions for purchases under GSA contracts declared that the order was being placed on behalf of the Department of the Army, listed the government contract number and declared that property delivered under the requisition would vest in the United States. However, the purchase order that was provided to the vendor merely referred to the government contract number and did not recite the other information contained in the requisition. Finally, if needed materials could not be obtained from government sources or under GSA contracts, a contractor could receive appropriate authorizations and make purchases from private vendors.

Unless the requirement was waived in writing, the contractor had to obtain the written approval of the Contracting Officer before purchasing any materials, supplies or equipment for a purchase price exceeding $500. Orders for supplies purchased from a private vendor, whether or not pursuant to a GSA contract, were placed by the contractor and vendors delivered the property directly to the contractor. The contractor paid the vendor from his own funds and the purchase price was reimbursed by the United States.

New Mexico assessed no gross receipts or compensating taxes against the contractors on the value of government owned property provided to the contractors but did assess such taxes on reimbursements for tangible personal property acquired by the contractors from private vendors, whether or not pursuant to GSA contracts.

G&A expenses were incurred by Lockheed at its headquarters in New Jersey and in Arizona and by RCA at its headquarters in New Jersey. G&A costs were reimbursable under a contract "pool" ratio formula, the G&A reimbursement being a percentage of the direct reimbursement for work performed in New Mexico. The stipulated facts list "the cost of services or items such as management, personnel, financial, marketing, contracting, industrial relations, legal, accounting, payroll, computer and administration" as allowable G&A expenses. Any G&A costs incurred in New Mexico were billed as direct costs under the contract rather than as indirect G&A expenses. It is further stipulated that none of the items which make up G&A costs involved the performance of direct services for the United States or its personnel.

## I

The government contends the New Mexico gross receipts statute unconstitutionally places the incidence of the tax on the United States. The Act provides that:

A. For the privilege of engaging in business, an excise tax equal to four per cent [4%] of gross receipts is imposed on any person engaging in business in New Mexico.

B. The tax imposed by this section shall be referred to as the "gross receipts tax."

N.M.Stat.Ann. § 72–16A–4 (Supp.1975). "Gross receipts" means *inter alia* "the total amount of money or the value of other consideration, received from selling property in New Mexico . . . or from performing services in New Mexico." *Id.* § 72–16A–3(F). The New Mexico Supreme Court has construed that statutory language as placing the legal incidence of the gross receipts tax on the seller. *First Nat'l Bank v. Commissioner of Revenue,* 80 N.M. 699, 705, 460 P.2d 64, 70 (Ct.App.), *cert. denied,* 80 N.M. 707, 460 P.2d 72 (1969), *appeal dismissed,* 397 U.S. 661, 90 S.Ct. 1407, 25 L.Ed.2d 643 (1970). Noting that "[t]he act in plain language levies the tax upon the privilege of engaging in business within the state and is measured by a percentage of a business's gross receipts" the

court below concluded that the language of the Act placed the legal incidence of the gross receipts tax on the contractors. His view is supported by the express language of *First Nat'l Bank* even though the result in that case casts some shadow over the principle it declares. *See Bradbury & Stamm Constr. Co. v. Bureau of Revenue,* 70 N.M. 226, 236, 372 P.2d 808, 815 (1962).

"States may not impose taxes directly on the Federal Government, nor may they impose taxes the legal incidence of which falls on the Federal Government." *United States v. County of Fresno,* 429 U.S. 452, 459, 97 S.Ct. 699, 703, 50 L.Ed.2d 683 (1977). Thus, the decisive issue in this case is whether the legal incidence of the challenged New Mexico taxes falls on the United States, regardless of where the economic burden ultimately rests. *See id.* at 462, 97 S.Ct. 699. Where, as here, federal rights and immunities are involved, we are not bound by the state court's characterization of that issue. *E. g., Diamond Nat'l Corp. v. State Bd. of Equalization,* 425 U.S. 268, 96 S.Ct. 1530, 47 L.Ed.2d 780 (1976); *First Agricultural Nat'l Bank v. State Tax Comm'n,* 392 U.S. 339, 347, 88 S.Ct. 2173, 20 L.Ed.2d 1138 (1968); *Society for Savings v. Bowers,* 349 U.S. 143, 151, 75 S.Ct. 607, 99 L.Ed. 950 (1955); *United States v. Allegheny County,* 322 U.S. 174, 184, 64 S.Ct. 908, 88 L.Ed. 1209 (1944). We must, however, "give [the state court's] finding great weight in determining the natural effect of a statute, and if it is consistent with the statute's reasonable interpretation it will be deemed conclusive." *Gurley v. Rhoden,* 421 U.S. 200, 208, 95 S.Ct. 1605, 1610, 44 L.Ed.2d 110 (1975) (*quoting American Oil Co. v. Neill,* 380 U.S. 451, 455–56, 85 S.Ct. 1130, 14 L.Ed.2d 1 (1965)); *see Diamond Nat'l Corp. v. State Bd. of Equalization,* 425 U.S. at 269, 96 S.Ct. 1530 (Stevens, J., dissenting).

The abstraction "legal incidence" has never been explicitly formulated by the Supreme Court. In confronting this issue on a case-by-case basis, however, the Court has upheld state taxes which were levied against those doing business with the United States where the tax: (1) was nondiscriminatory; (2) did not substantially interfere with the performance of federal functions; (3) was not required to be passed on to and was not otherwise directly imposed on the United States or its duly appointed agents; (4) was not precluded by Congress; and (5) was an otherwise valid exaction. *E. g., United States v. County of Fresno,* 429 U.S. at 462–65, 97 S.Ct. 699; *City of Detroit v. Murray Corp. of America,* 355 U.S. 489, 494, 78 S.Ct. 458, 2 L.Ed.2d 441 (1958); *United States, v. Township of Muskegon,* 355 U.S. 484, 486–87, 78 S.Ct. 483, 2 L.Ed.2d 436 (1958); *United States v. City of Detroit,* 355 U.S. 466, 472–75, 78 S.Ct. 474, 2 L.Ed.2d 424 (1958); *Curry v. United States,* 314 U.S. 14, 17–18, 62 S.Ct. 48, 86 L.Ed. 9 (1941); *Alabama v. King & Boozer,* 314 U.S. 1, 13–14, 62 S.Ct. 43, 86 L.Ed. 3 (1941); *Colorado Nat'l Bank v. Bedford,* 310 U.S. 41, 52–53, 60 S.Ct. 800, 84 L.Ed. 1067 (1940).

The Act specifically makes the gross receipts tax applicable to the doing of business in New Mexico without reference to whether that business is with the United States and, with uniformly applied exceptions, assesses the tax upon anyone receiving compensation. There is no evidence that the tax interferes with the performance of federal functions. The tax is not directly imposed on the United States and, although the contractors pass the tax on to the United States they are not required by the Act to do so. Furthermore, the contracts specifically provide that the contractors are not acting as agents of the United States. Finally, Congress has not spoken to preclude this tax and there is no evidence demonstrating that the challenged New Mexico taxing scheme is otherwise invalid. As such, we must agree with the district court and the New Mexico ,courts that the legal incidence of the New Mexico gross receipts tax is on the contractors as sellers of services to the United States.

The fact that during the period covered by the challenged assessments New Mexico law contained a provision which made it unlawful to advertise that the gross receipts tax was not part of the sale price (N.M.Laws 1966, ch. 47, § 17 (repealed 1975)) does not require a different result.

The seller was not required to collect the tax from the purchaser and the statutory provision did not indicate an intent to place the legal incidence of the tax on the purchaser. If the tax, by its terms, were required to be passed on to the purchaser, the result would be different. *United States v. Tax Comm'n of Mississippi*, 421 U.S. 599, 607–08, 95 S.Ct. 1872, 44 L.Ed.2d 404 (1975); *First Agricultural Nat'l Bank v. State Tax Comm'n*, 392 U.S. at 347, 88 S.Ct. 2173. However, the Supreme Court has laid to rest any doubts regarding the legal incidence of a tax where, as here, the taxing scheme does not require that the tax be passed on to the purchaser. In such cases, the legal incidence is on the contractors as sellers. *Gurley v. Rhoden*, 421 U.S. at 204–06, 95 S.Ct. 1605.

It is argued that the contracts between the United States and the contractors in the case before us shift the economic burden of the tax to the United States. In *James v. Dravo Contracting Co.*, 302 U.S. 134, 137, 58 S.Ct. 208, 210, 82 L.Ed. 155 (1937), the Supreme Court considered the same issue as the one now before us: "the constitutional validity of a tax imposed by the state . . . upon the gross receipts . . . under contracts with the United States." In addressing that issue, the Court concluded that the fact "that the gross receipts tax may increase the cost to the government . . . would not invalidate the tax" where its legal incidence falls elsewhere. *Id.* at 160, 58 S.Ct. at 221.

*Alabama v. King & Boozer*, 314 U.S. at 1, 62 S.Ct. 43, 86 L.Ed. 3, which involved an Alabama use tax, appears to be the case most closely analogous to the case before us. The terms of the cost-plus contract with the United States in *King & Boozer* were strikingly similar to those in the instant case: (1) the contractors ordered and paid for materials and were in turn reimbursed by the United States; (2) the United States reimbursed the contractors for state and local taxes; (3) title to all supplies and materials purchased by the contractors vested in the United States upon delivery to the work or storage site; (4) the United States reserved the right to furnish any and

all necessary materials and to pay directly to vendors the sums due from the contractors; (5) upon termination of the contract by the United States the government assumed the good faith obligations of the contractor; (6) the contractor was to make all contracts in excess of $2,000 with vendors in its own name and not bind or purport to bind the United States; (7) the decision of whether to buy and what to buy was reserved to government officers; and (8) the advance approval of the Contracting Officer was required for purchases of materials costing $500 or more. The Court rejected the government's argument that the United States was the purchaser of the materials and, consequently, that the legal incidence of the tax fell on the United States. It concluded instead that the above provisions, "read together, plainly contemplate that the contractors were to purchase in their own names and on their own credit all the materials required, unless the Government should elect to furnish them; that the Government was not to be bound by their purchase contracts, but was obligated only to reimburse the contractors when the materials purchased should be delivered, inspected and accepted at the site." 314 U.S. at 11, 62 S.Ct. at 46.

*Carson v. Roane-Anderson Co.*, 342 U.S. 232, 72 S.Ct. 257, 96 L.Ed. 257 (1952) and *Kern-Limerick, Inc. v. Scurlock*, 347 U.S. 110, 74 S.Ct. 403, 98 L.Ed. 546 (1954) do not lead to a contrary result. In *Carson*, Congress exempted the involved activities from taxation through specific legislation. Here an express or even implied congressional declaration of immunity is lacking. In *Kern-Limerick*, private contractors procured two tractors in Arkansas for use in performing a cost-plus contract with the United States Navy. The contract provided that the contractors were to act as purchasing agents for the United States, that title to the materials was to pass directly from the vendor to the United States and that the United States would be directly liable to the vendor for the purchase price. The Supreme Court held the Arkansas Gross Receipts Tax Law unconstitutional as ap-

plied to the involved transactions because the legal incidence of the tax fell on the United States as the actual purchaser of the tractors. The instant case is distinguished by the fact that here the contracts did not authorize the contractors to act as agents of the United States in purchasing supplies and materials and the United States was not directly liable to vendors for the purchase price of supplies and materials purchased by the contractors. In fact, each contract specifically provided that the contractor was to act "as an independent contractor and not as an agent of the government" regardless of whether the contractor was dealing with a vendor pursuant to a GSA supply schedule contract or otherwise.[1] *See United States v. Township of Muskegon,* 355 U.S. at 486, 78 S.Ct. 483. The *Kern-Limerick* court recognized this distinction by acknowledging that "purchases by independent contractors of supplies for Government construction or other activities do not have federal immunity from taxation." 347 U.S. at 122, 74 S.Ct. at 411.

■ In the wake of clear and time-honored authority, we conclude that an application of the New Mexico gross receipts tax to the contractual transactions in this case was not unconstitutional. We therefore affirm the determination and judgment of the trial court on this issue.

## II

■ The United States also contends that New Mexico's "compensating tax" is unconstitutional. The Act provides that a compensating or use tax is payable on property acquired outside New Mexico but used within the state as a result of a transaction that would have been subject to a gross receipts tax had it occurred in New Mexico. N.M.Stat.Ann. § 72–16A–7 (Supp.1975). Under the Act, "[a]ny person in New Mexico using property on the value of which

compensating tax is payable but has not been paid is liable to the state for payment of the compensating tax but this liability is discharged if the buyer has paid the compensating tax to his seller for payment over to the bureau." *Id.* § 72–16A–9. The tax is clearly nondiscriminatory, does not interfere with the performance of federal functions, was not imposed on the United States either directly or indirectly, has not been precluded by Congress and appears to otherwise be valid. As such, we agree with the district court's conclusion that this provision placed the legal incidence of the compensating tax on the contractors as the purchasers who brought materials and supplies into New Mexico. Accordingly, the application of the compensating tax to reimbursements for property purchased out-of-state and brought into New Mexico for use under the government contracts was valid. *See Mountain States Advertising, Inc. v. Bureau of Revenue,* 89 N.M. 331, 333, 552 P.2d 233, 235 (Ct.App.), *cert. denied,* 90 N.M. 8, 558 P.2d 620 (1976).

## III

The United States contends that if the government were the purchaser of the property from the vendor (an argument which we have already rejected) New Mexico would be prevented from collecting its gross receipts or compensating tax from the vendor under a provision of the Act stating that "[r]eceipts from selling tangible personal property . . . to the United States . . . may be deducted from gross receipts." N.M.Stat.Ann. § 72–16A–14.9 (Supp.1975). The government further argues that, even if the contractors were deemed to be the purchasers, New Mexico could not tax the receipts of the vendors under Section 72–16A–14.2, which provides that "[r]eceipts from selling tangible personal property may be deducted from gross

---

1. Our conclusion that the contractors were not acting as servants or agents of the United States when they purchased supplies and materials is bolstered by the fact, as found by the trial court, "that, at least since 1955, it has been the policy of the Department of Defense not to include in its contracts agency-creating

clauses to avoid state and local taxes otherwise payable by its contractors." Record, vol. 1, at 119. If the United States desires to avoid enriching state coffers with federal funds, it can easily do so by changing the terms of its contracts. *See Kern-Limerick, Inc. v. Scurlock,* 347 U.S. at 122–23, 74 S.Ct. 403.

receipts if the sale is made to a person who delivers a nontaxable transaction certificate to the seller." Under this theory the buyer who delivers the nontaxable transaction certificate must resell the property "in the ordinary course of business." *Id.* § 72–16A–14.2. Assuming these requirements were met, vendors would not be required to pay a gross receipts tax because the property was intended for resale and contractors would not be liable for the gross receipts tax because the resale was to the United States.

The district court found that neither of the above exemptions applied to the contractors because:

> The contracts between them and the Army are not for the sale to the Army of tangible personal property. . . .
> [E]ach contract as a whole reflects the intention of the Army to receive and RCA and Lockheed to furnish certain services. Under such circumstances, the personal property acquired by the contractors and either incorporated into Army systems or consumed in performing the engineering and other services called for by the contracts was only incidental to the services rendered under the contracts, *Hamm v. Boeing Co.* [283 Ala. 310], 216 So.2d 288 (Ala.1968); *Olson Construction Co. v. Tax Commission* [12 Utah 2d 42], 361 P.2d 1112 (Utah 1961); *United Aricraft [sic] Corp. v. O'Connor* [141 Conn. 530], 107 A.2d 398 (Conn. 1954); and no sale by RCA and Lockheed of tangible personal property to the United States took place.

Record, vol. 1, at 123. We agree with the district court that reimbursements for materials and supplies consumed in performing services under the contracts are merely reimbursements for those services. However, a more troublesome question is presented regarding reimbursements for capital equipment which is not expended in performing the services. Although the district court appears to have placed undue emphasis on the characterization in the contracts that they were executed for the performance of services, the district court's opinion, read as a whole, clearly indicates that the court also considered pertinent factual realities such as the passage of title to the United States upon delivery of property by the vendor, government control over purchasing, the risk of loss generally being borne by the United States, and accounting and inventory practices under the contracts.

The district court's opinion does not contain a recitation regarding amounts reimbursed to the contractors for nonexpendable materials, supplies and equipment used in fulfilling their obligations under the contracts. However, the stipulation executed by the parties contains the following information:

> Of [$4,099,000 paid to RCA by the United States under one contract] $139,125 represented the cost of tangible personal property purchased from third parties by RCA and of this amount $5504 was for the purchase of non-expendable items. . . . Equivalent figures are not available for the calibration contract. In performance of its contracts, an estimated 15% to 20% of the total dollar value of the Lockheed contracts represented the cost of tangible personal property purchased by Lockheed.

Record, vol. 1, at 54. The stipulation further declares:

> Under the Lockheed contracts, 87% of all property purchased was for non-expendable or capital equipment. All tangible personal property purchased by Lockheed was used in performing the contract. As to the RCA contract, generally any capital equipment that was purchased was used in the performing of services under the contract. All non-capital items would ultimately be consumed in the performance of services under the contract except for the inventory on the last day of operation.

*Id.* at 59. It is apparent that the information before the district court was incomplete. Available information reveals, however, that reimbursements for capital items under one RCA contract accounted for only a fraction of one percent of total payments under the contract and Lockheed's reim-

bursements for capital items amounted to between 13 percent and 17.4 percent of total payments. Thus, the procurement of capital items appears to be "incidental" to the performance of services under the contracts.

Were we to view the evidence as factfinders in the first instance we might find that, in addition to performing services, the contractors sold property to the United States. Nevertheless, there is support for the trial court's conclusion, *see Department of Treasury of Indiana v. Ingram-Richardson Mfg. Co.*, 313 U.S. 252, 254, 61 S.Ct. 866, 85 L.Ed. 1313 (1941), and we cannot say that it is clearly erroneous.[2] *But see Goodyear Aircraft Corp. v. Arizona State Tax Comm'n*, 1 Ariz.App. 302, 402 P.2d 423, 427–28 (1965). In addition, we have found no evidence in the record that the contractors provided "nontaxable transaction certificates" to their vendors when they purchased property to be used in fulfilling their government contracts. Even if we were to reject the district court's conclusion that the personal property was not "resold" to the government but was utilized in providing services for the government, we could not find that gross receipts taxes were improperly collected from the vendors since technical requirements of Section 72–16A–14.2 have not been met.[3] The contractors must bear the burden of establishing their entitlement to an exemption under the New Mexico taxing scheme. *General*

*Motors Corp. v. Washington*, 377 U.S. 436, 441, 84 S.Ct. 1564, 12 L.Ed.2d 430 (1964). The United States, in assuming the position and burdens of the contractors in this proceeding, has failed to demonstrate such entitlement under either proffered exemption.

## IV

■ The district court excluded reimbursements for G&A expenses from the application of the New Mexico gross receipts tax. The court's rationale was that such expenses were incurred outside the state of New Mexico and the New Mexico Bureau of Revenue could only collect a gross receipts tax on money received from services performed in New Mexico. N.M.Stat.Ann. § 72–16A–3(F) (Supp.1975). New Mexico contends that the district court erred because certain of the elements which make up G&A expenses could not be characterized as services and because G&A, as a cost item, does not have an existence apart from the performance of direct services in New Mexico. Although G&A is separately stated on the invoices and is a separate element in each contract, it is computed as a percentage of direct contract costs incurred in New Mexico.

Assuming that, when they received reimbursements for G&A expenses, the contractors were being reimbursed for work (whether called "services" or by any other name) performed outside New Mexico, it is

---

**2.** Each of the contracts provide that "[t]he Government and the Contractor understand and agree that the services to be delivered under this contract by the Contractor to the Government are nonpersonal services." Record, vol. 1, at 115. Various contracts also provide that the contractor shall provide "nonpersonal services required in operating and maintaining the White Sands Missile Range Calibration Laboratory" including the "management, administrative, supervisory and technical support, transportation and other resources necessary and incident to the furnishing of calibration and repair services;" "Non-Personal Technical Radar Services for the Operation; Maintenance, Repair, Relocation, and modification of Radar Systems, Target Acquisition Systems, Chain and Radar Systems, and associated subsystems;" and "nonpersonal services including engineering and technical services to design, assemble, test, install and modify range instru-

mentation, communication, control, and support systems." *Id.* at 114 n. 1.

**3.** New Mexico contends that inasmuch as the United States made no specific request for relief regarding gross receipts tax payments by vendors and did not present evidence on or request a determination of this issue below, it may not be raised on appeal. The court below specifically found that "those provisions of the state act that grant an exclusion from the gross receipts tax for sales to the United States [Section 72–16A–14.9] or for sales for resale [Section 72–16A–14.2] do not apply to RCA and Lockheed." Record, vol. 1, at 122–23. The court below specifically addressed Section 72–16A–14.2 and the United States' appeal has properly raised issues regarding that determination.

clear that New Mexico taxing authorities would lack authority to tax those transactions. *See American Oil Co. v. Neill*, 380 U.S. at 457, 85 S.Ct. 1130. However, a different problem is presented where, as here, the G&A expenses arise from contracts which are generally performed in New Mexico:

> Only where income arising from a contract performed within the state accrues upon a separable out-of-state transaction should it be excluded, as not being income arising from contracting within the state.

*Dravo Contracting Co. v. James*, 114 F.2d 242, 247 (4th Cir. 1940), *cert. denied*, 312 U.S. 678, 61 S.Ct. 450, 85 L.Ed. 1117 (1941). We are unable to identify such a separable out-of-state transaction. The government did not contract separately for the G&A "services." They were merely incidental to the general operation of each contractor and are similar to expenses which are generally built into the pricing structure of most commodities.

The validity of the application of New Mexico's gross receipts tax to G&A expense reimbursements depends on whether the tax was "laid upon the gross receipts of [the contractors] derived from [their] activities within the borders of the state." *James v. Dravo Contracting Co.*, 302 U.S. at 161, 58 S.Ct. at 221. The Court of Appeals of New Mexico confronted a similar question in *Mountain States Advertising, Inc. v. Bureau of Revenue*, 89 N.M. at 331, 552 P.2d at 233. In *Mountain States*, the taxpayer, a Colorado corporation, appealed from a Decision and Order of the Commissioner of Revenue which imposed the gross receipts tax on income derived from displaying advertising messages on outdoor signs located in New Mexico. All of the taxpayer's employees resided in Colorado, it had no office or other facility in New Mexico, conducted no sales solicitations in New Mexico, did not bill in New Mexico, received no sums there, did not purchase materials for the signs in New Mexico or employ New Mexico residents to erect or service the signs and only ten percent of the money expended on any given sign was expended in New Mexico. In rejecting the taxpayer's contention that

only ten percent of its gross receipts from the New Mexico signs was subject to the tax, the court declared that the taxpayer was confused in relating cost accounting to the performance of a service in New Mexico. 552 P.2d at 235. The court reasoned that "[a]pportionment between in-state and out-of-state activity does not arise where the tax is levied only upon receipts resulting from the taxpayer's activities in New Mexico." *Id.* In the instant case, all receipts under the New Mexico contracts result solely from the contractor's activities in New Mexico and the G&A expense category appears merely to be a cost accounting device.

Although a superficial examination of *Advance Schools, Inc. v. Bureau of Revenue*, 89 N.M. 79, 547 P.2d 562 (1976), may appear to be contrary to our conclusion that G&A reimbursements may be taxed by New Mexico, we believe that a closer reading shows the case to be distinguishable. In *Advance Schools*, the Commissioner sought to tax the entire tuition paid to the taxpayer by New Mexico mail order students. The court found that the taxpayer was selling personal property (course materials) in New Mexico and services (grading, placement, etc.) which were performed outside New Mexico. Based on the facts, the court held that New Mexico could not tax services performed outside the state and that the Commissioner could only apply the gross receipts tax to the value of property entering the state. *Id.* at 82, 547 P.2d at 565. In this case, the United States has not demonstrated that the G&A reimbursements are for services performed for the United States out-of-state. On the contrary, G&A expenses appear merely to be a component of the price for services performed under the contracts in New Mexico.

Those portions of the district court's judgment which declare that New Mexico has the right to assess and collect gross receipts and compensating taxes against amounts the contractors were reimbursed by the United States for tangible personal property purchased in the performance of services under the contract are affirmed.

That portion of the district court's judgment which declares that New Mexico is not entitled to assess its gross receipts tax against reimbursements received by the contracts from the United States for G&A expenses is reversed. The case is remanded with instructions to enter an order consistent with this opinion.