ROCKWELL SPRING & AXLE COMPANY v. ROMULUS TOWNSHIP.

1. Taxation—Exempt Property Used for Profit—Purpose of Statute.

The purpose of statute subjecting tax-exempt property that is made available to private individuals and corporations in connection with a business conducted for profit to taxation for public purposes the same as other property was to fix the status of the right of user with reference to taxation (CLS 1956, §§ 211.181, 211.182).

2. Same—Exempt Property Used for Profit—Constitutional Law.

Statute subjecting to taxation, the same as other property, tax-exempt property made available to parties using it in connection with a business conducted for profit, is specific in its terms, is unambiguous, and does not create a new tax applicable to

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 51 Am Jur, Taxation § 576.
[2] 51 Am Jur, Taxation § 130.
[3] 51 Am Jur, Taxation § 501.
[4] 51 Am Jur, Taxation §.504.
[5] 51 Am Jur, Taxation § 520.

specific property for a specific object, nor does it continue or revive a tax, hence, does not violate section of the Constitution requiring a statute which imposes, continues, or revives a tax distinctly to state the tax and the objects to which it shall be applied (Const 1908, art 10, § 6; CLS 1956, §§ 211.181, 211.182).

3. Same—Exemptions.

The legislature has power to grant exemptions from taxation.

4. Same—Exemptions—State Educational Institutions—Uniformity.

The exemption from taxation of property devoted to the purposes of State-supported educational institutions may not be regarded as fanciful or arbitrary and in violation of the due process or equal protection clauses, since it is conducive to the welfare of the general public as well as to the benefit of the particular educational institution involved (US Const, Am 14; Mich Const 1908, art 2, §§ 1, 16; art 10, § 4; CLS 1956, §§ 211.181, 211.182).

5. Same—Exemptions—Discrimination.

The legislative power to grant exemptions from property taxation must not be exercised so as to effect clear and hostile discriminations between particular persons and classes (US Const, Am 14; Mich Const 1908, art 2, §§ 1, 16; art 10, § 4).

6. Same—Exemptions—Airports—Hangars.

The fact that the dominant purpose of an airport is to render necessary services to the public provides the basis for exempting such property from taxation and such right of exemption extends to hangars which are merely incidental to the main purpose of the airport which functions as a unit, making it scarcely feasible to separate the space therein contained for purposes of taxation (CLS 1956, §§ 211.181, 211.182).

7. Same—Exempt Property Used for Profit—Constitutional Law.

Property occupied by plaintiff foreign business corporation under 10-year lease from board of county road commissioners and which constituted space designed for hangar, shop, and office use at tax-exempt county airport was properly subjected to property taxation under pertinent statute that is not unconstitutional as being a denial of due process, equal protection, or uniformity or for noncompliance with provision requiring statute imposing, continuing, or reviving a tax to state the tax and objects to which it is to be applied (US

Const, Am 14; Mich Const 1908, art 1, §§ 1, 16; art 10, §§ 4, 6; CLS 1956, §§ 211.181, 211.182).

Appeal from Wayne; Glennie (Philip J.), J., presiding. Submitted January 5, 1962. (Docket No. 44, Calendar No. 49,072.) Decided March 16, 1962.

Assumpsit by Rockwell Spring & Axle Company, a Pennsylvania corporation, against Romulus Township and its treasurer to recover tax paid under protest. Judgment for defendant. Plaintiff appeals. Affirmed.

*Coulter, O'Hara & Coulter* (*John P. O'Hara, Jr.,* of counsel), for plaintiff.

*Samuel H. Olsen,* Prosecuting Attorney, *Aloysius J. Suchy* and *William F. Koney,* Assistant Prosecuting Attorneys, for defendants.

CARR, J. Plaintiff in this case is a Pennsylvania corporation authorized to carry on business within the State of Michigan. The county of Wayne owns and operates within the township of Romulus an airport designated as Detroit-Wayne Major Airport. In connection therewith there has been constructed by the board of county road commissioners of Wayne county a hangar capable of housing a number of airplanes. In November, 1953, said commission, acting on behalf of Wayne county, entered into a leasing agreement with plaintiff, covering approximately 6,500 square feet of space designed for use for hangar, shop, and office purposes, to continue in effect for a 10-year period beginning with date of occupancy. Plaintiff entered into possession thereof in December of 1954.

In the following year defendant township caused the interest of plaintiff in the hangar to be assessed

for county, township, and school taxes, the total valuation being fixed at $40,210, and the amount of the assessment being $1,433.89. Said assessment was made under the provisions of PA 1953, No 189 (CLS 1956, §§ 211.181, 211.182, Stat Ann 1960 Rev §§ 7.7[5], 7.7[6]). The tax statement rendered indicated that the assessment was based on plaintiff's right of user and its interest therein under the lease above mentioned. The tax so assessed was paid under protest, duly served on defendant township treasurer, asserting that said act of 1953 was, for several reasons named, unconstitutional. Plaintiff brought this action to recover the tax, the case being instituted under date of February 15, 1956. Following a trial before the circuit judge without a jury judgment was entered denying the right of plaintiff to recover, and it has appealed.

The statute the constitutionality of which is here involved is entitled:

"An act to provide for the taxation of lessees and users of tax-exempt property."

It reads as follows:

"Sec. 1.  When any real property which for any reason is exempt from taxation is leased, loaned or otherwise made available to and used by a private individual, association or corporation in connection with a business conducted for profit, except where the use is by way of a concession in or relative to the use of a public airport, park, market, fair ground or similar property which is available to the use of the general public, shall be subject to taxation in the same amount and to the same extent as though the lessee or user were the owner of such property: Provided, however, That the foregoing shall not apply to Federal property for which payments are made in lieu of taxes in amounts equivalent to taxes which might otherwise be lawfully assessed

or property of any State-supported educational institution.

"Sec. 2. Taxes shall be assessed to such lessees or users of real property and collected in the same manner as taxes assessed to owners of real property, except that such taxes shall not become a lien against the property. When due, such taxes shall constitute a debt due from the lessee or user to the township, city, village, county and school district for which the taxes were assessed and shall be recoverable by direct action of assumpsit."

The constitutionality of PA 1953, No 189, was involved in *United States and Borg-Warner Corporation* v. *City of Detroit,* 345 Mich 601, 355 US 466 (78 S Ct 474, 2 L ed 2d 424), and also in *Township of Muskegon* v. *Continental Motors Corporation,* 346 Mich 218, *sub nom United States* v. *Township of Muskegon,* 355 US 484 (78 S Ct 483, 2 L ed 2d 436), in which this Court, the supreme court of the United States affirming, held that the claims of invalidity for the reasons there advanced were not tenable. In the instant case plaintiff assailed the statute on claims other than those advanced in the decisions cited. It is the position of counsel for appellant that the act violates article 10, § 6, and article 10, § 4, of the Michigan Constitution (1908), article 2, § 16, of the Constitution of the State, and the 14th amendment to the Federal Constitution. It is also contended that the act does not apply to a hangar leased at a public airport. The trial judge considered these contentions at some length, and in a written opinion filed in the cause rejected them.

Article 10, § 6, of the Constitution of this State (1908) provides as follows:

"Every law which imposes, continues or revives a tax shall distinctly state the tax, and the objects to which it is to be applied; and it shall not be sufficient to refer to any other law to fix such tax or object."

The purpose of the legislature in the adoption of PA 1953, No 189, is obvious. It was to declare subject to taxation, as other property is taxed for public purposes, a right to the *use* of property which is not subject to taxation as such, subject to the exceptions specified in section 1 and to the manner of collection set forth in section 2. The legislature obviously deemed it proper that the right of user of exempt property should be considered in the same category as property generally that is subject to taxation under the laws of the State. The purpose was to fix the status of the right of user with reference to taxation. That such right is a valuable one is not open to question, and the legislature deemed that the possessor thereof should be required to assume liability to contribute by way of taxes on an equal basis with property owners generally. Act No 189 does not create a new tax applicable to specific property for a specific object, nor does it continue or revive a tax. Bearing in mind the purpose of the act and the object sought to be achieved by the constitutional requirement imposed, it may not be said that Act No 189 is in conflict with the section of the Constitution on which appellant relies.

This Court in *Westinghausen* v. *People,* 44 Mich 265, considered an objection to the requirement of a statute enacted in 1879 requiring the payment of a tax for the privilege of selling intoxicating liquor, the objection being based on article 14, § 14, of the Constitution of 1850, the language of which was repeated in the present State Constitution in article 10, § 6. In rejecting the claim advanced by the appellant, it was said with reference to the purpose and scope of the constitutional provision (p 267):

"Its intent is manifest, to prevent the legislature from being deceived in regard to any measure for levying taxes, and from furnishing money that

might by some indirection be used for objects not approved by the legislature. Inasmuch as the Constitution (1850) in another place confines all statutes to single objects, the restriction is less important than under the old (1835) Constitution. It must receive a reasonable construction to carry out its design. The statute in question does not, we think, violate that design. The tax, it is admitted, is definite enough. It is to be received by the county treasurer of each county and placed by him to the credit of the contingent fund of the township, city or village from which it is collected, and paid over to the proper local officer to be used for the purposes of that fund. P.A. 1879, No 268, p 297.

, "We can see no reason why the increase of the contingent fund of a corporation is not a specific object. The Constitution certainly does not contemplate, but rather forbids, any reference to a city or village charter in terms; and it would be a gross abuse to insert in such a statute as this a copy of the multifarious purposes of a contingent fund, mentioned in any or all of the local charters at length. There is no uncertainty in a provision which names the classes of beneficiaries, and devotes the taxes to their use in a fund which is perfectly understood by every one as devoted to non-specified purposes, some of which could not be readily foreseen. If this objection is good it would be difficult to understand why a city charter allowing money to be paid into a contingent fund, would not come within similar difficulties. A nice objector might say that paying money over to a city or township for general purposes would be uncertain. We must treat these provisions sensibly, and not hypercritically; and when the purpose is named and unmistakable, and it is impossible for the legislature to be misled concerning it, no other practical requirement can be found."

As before suggested, the statute in question here was designed to subject a certain type of property to general taxation, necessarily implying that such

taxes should be used for the general purposes of government in the same manner as other tax money is required to be used. Its language is specific and may not be said to be ambiguous in any respect. Certainly there could have been no misunderstanding on the part of the legislature as to either the purpose of the act or the objects to which the tax imposed should be devoted. We conclude that the claim of invalidity based on a violation of the requirement of article 10, § 6, of the present State Constitution is untenable.

The further claims that PA 1953, No 189, violates article 10, § 4, of the Constitution because lacking in uniformity, and also article 2, § 16, of the Michigan Constitution, and the 14th amendment to the Federal Constitution, are based primarily on the provision in section 1 of the act excepting property "of any State-supported educational institution." The argument is advanced in support of such claims that plaintiff may not be required to pay a tax on the use of the space that it is using at the Detroit-Wayne Major Airport, while one similarly situated leasing space at the Willow Run Airport, which, as plaintiff alleges, is owned by the University of Michigan, is not subject to taxation on a like use. In other words, the argument is that the exemption applicable to the Willow Run Airport rendered illegal and void the assessment made against plaintiff.

The power of the legislature to grant exemptions from taxation has been repeatedly considered, and upheld, by this Court as well as by courts generally throughout the country. The exemption in the instant case with reference to property devoted to the purposes of State-supported educational institutions may not be regarded as fanciful or arbitrary. In *Lucking* v. *People,* 320 Mich 495, 503, it was said:

"The lands, buildings and equipment under the management, supervision and control of the board of regents of the university are public property, owned by the State of Michigan. Such public property belonging to the State is exempt from property tax. CL 1929, § 3395, as last amended by PA 1946 (1st Ex Sess), No 24 (Stat Ann 1947 Cum Supp § 7.7). *Auditor General* v. *Regents of the University of Michigan,* 83 Mich 467 (10 LRA 376); *City of Detroit* v. *George,* 214 Mich 664; *People, for use of Regents of the University of Michigan,* v. *Brooks,* 224 Mich 45; *James A. Welch Co., Inc.,* v. *State Land Office Board,* 295 Mich 85."

The reasons for the exemption of State-owned property from taxation are too obvious to require discussion. In the instant case it is apparent that the exemption of the taxation of the use of such property is conducive to the welfare of the general public as well as to the benefit of the particular educational institution involved. What the legislature has done in the enactment of Act No 189 is to reasonably extend the exemption recognized in the general tax law of the State with reference to the property devoted to the purposes of the university.

In *Banner Laundering Co.* v. *State Board of Tax Administration,* 297 Mich 419, the controversy involved the validity of the State use tax act (PA 1937, No 94).* There, as in the case at bar, it was claimed that exemptions contained in the act resulted in the failure to permit uniformity and that said act, in consequence, violated constitutional inhibitions. The claims made were rejected, the Court holding that the legislature had not exceeded its authority.

In reaching its decision in the above case the Court cited with approval (p 433) the opinion of

---

* Currently CL 1948, § 205.91 *et seq.,* as amended (Stat Ann 1960 Rev § 7.555[1] *et seq.*).—Reporter.

the United States supreme court in *Citizens' Telephone Co. of Grand Rapids* v. *Fuller, Auditor General of the State of Michigan,* 229 US 322 (33 S Ct 833, 57 L ed 1206). In that case the plaintiff challenged the constitutionality of a statute of this State taxing telephone companies but exempting therefrom those whose gross receipts did not exceed $500 per annum. In upholding the statute the Court cited numerous cases involving exemptions in statutes pertaining to taxation, and other cases involving the same principle. In discussing the situation, it was said, in part (p 331):

"To these cases may be added others. They illustrate the power of the legislature of the State over the subjects of taxation and the range of discrimination which may be exercised in classifying those subjects when not obviously exercised in a spirit of prejudice and favoritism. *Cook* v. *Marshall County,* 196 US 261, 274 (25 S Ct 233, 49 L ed 471); *Missouri* v. *Dockery,* 191 US 165 (24 S Ct 53, 48 L ed 133, 63 LRA 571). The cases decided subsequent to the decision in *Bell's Gap Railroad Co.* v. *Pennsylvania,* 134 US 232 (10 S Ct 533, 33 L ed 892), have applied its principle to many varying instances. Granting the power of classification, we must grant government the right to select the differences upon which the classification shall be based, and they need not be great or conspicuous. *Keeney* v. *New York,* 222 US 525, 536 (32 S Ct 105, 56 L ed 299, 38 LRA NS 1139). The State is not bound by any rigid equality. This is the rule;—its limitation is that it must not be exercised in 'clear and hostile discriminations between particular persons and classes.' See [*Quong Wing* v. *Kirkendall*] 223 US 59, 62, 63 (32 S Ct 192, 56 L ed 350). Thus defined and thus limited, it is a vital principle, giving to the government freedom to meet its exigencies, not binding its action by rigid formulas but apportioning its burdens and permitting it to make those 'discriminations which the best interests of society require.'"

In the enactment of PA 1953, No 189, the legislature did not exceed its authority. There is no basis for any claim that the exemption of which appellant complains was unreasonable or designed to discriminate as between taxpayers similarly situated. The claims of constitutional infringement because of the exemption in favor of State-owned property, and of those exercising rights of user under contractual arrangements, are lacking in substantial merit. The statute in question here is not invalid because of lack of uniformity in taxation or on the theory of a denial of the equal protection of the laws.*

The county-owned airport in which plaintiff has rented space for certain purposes connected with its business was established and is operated to accomplish a public purpose. PA 1957, No 206 (CL 1948, § 259.621 et seq., as amended by PA 1958, No 216 [Stat Ann 1960 Rev § 10.311 et seq.]), providing for the creation of airport authorities and defining the powers and duties thereof is indicative of the attitude of the State of Michigan, evidenced by action of its legislature, toward the establishment of such facilities for public use. The basic purpose of the Detroit-Wayne Major Airport was, and is, to render necessary services to the public. In accordance with over-all purpose, the property, due to the nature of the ownership thereof, is not subject to taxation under the general law. On behalf of appellant the argument is advanced that such right of exemption should not be extended to the hangars on the theory that space therein is rented to individuals or corporations for private purposes and that in consequence the county should be taxed on that portion of the airport occupied by such hangars.

---

* See US Const, Am 14; Mich Const 1908, art 2, § 1.—REPORTER.

Apparently the airport after its construction contained space available for uses incidental to its main purpose. Whether such condition will continue indefinitely is obviously uncertain. It is clear, however, that the present method of permitting occupancy and use of the hangars by private parties is in keeping with the general purpose of the airport and tends to increase the value to the public of the facilities thereof. Such revenue as is received is doubtless of some assistance in maintaining and improving the service offered to the public. The argument of counsel for appellant that the hangars should be assessed to the county, and taxes thereon paid by it, suggests practical difficulties to the carrying out of any such plan. The airport is a unit, and it would scarcely be feasible to separate the space therein contained for purposes of taxation. Furthermore, the use that is being made of the hangars is merely incidental to the main purpose and as such is not open to objection. In *Dyer* v. *Township of Burns,* 228 Mich 513, this Court recognized the legality of a bond issue for the purpose of constructing a town hall notwithstanding claims and proof that it might be used also for other purposes. It was emphasized that the dominant motive in the proposed construction was the providing a hall for use by the township.

In *Cleveland* v. *City of Detroit,* 322 Mich 172, the controversy involved the condemnation of property for terminals of the street railway system of defendant city. In the course of the opinion it was said, in part (p 179):

"The question of whether the proposed use is a public use is a judicial one. We hold that use of property for terminals for defendant's street railway system is a public use. The use thus having been judicially determined to be public, the question of the necessity of acquiring certain property for

that public use is one for a jury of freeholders. In acquiring property for public use it is not permissible for the city to take additional property not necessary for that public use for private purposes. However, condemnation proceedings for the acquisition of so much and no more property than is necessary for a permissible public use will not be defeated by the mere fact that an incidental private benefit or use of some portion of such property will result. *Berrien Springs Water-Power Co.* v. *Berrien Circuit Judge,* 133 Mich 48 (103 Am St Rep 438); *Dyer* v. *Township of Burns,* 228 Mich 513."

In *Shizas* v. *City of Detroit,* 333 Mich 44, 52, reference was made to the claim in *Cleveland* v. *City of Detroit, supra,* that the construction of subsurface terminals for the purposes of the street railway system of the city would result in space in the structures to be erected that would not be required for the carrying out of the main purpose. With reference thereto, it was said (p 53):

"Such a use might properly be held to be merely incidental to the main object served."

Without discussing the matter further, we think it obvious in the instant case that the present use of certain space in the airport in question is merely incidental to the main purpose, that is, the public purpose for which the airport as a whole was constructed, that the basic purpose to be served is controlling, and that the airport in its entirety is exempt from taxation under the general property tax law of the State. We are not in accord with appellant's claim that the hangars are not within the purview of PA 1953, No 189. On the contrary, said act is applicable thereto and the use of the space rented by plaintiff is subject to taxation accordingly. The statute in question may not be held invalid for any of the reasons urged by appellant in the case at bar.

The judgment of the lower court is affirmed. Appellees may have costs.

DETHMERS, C. J., and KELLY, BLACK, KAVANAGH, SOURIS, OTIS M. SMITH, and ADAMS, JJ., concurred.