**CHRYSLER CORPORATION, a Delaware Corporation, Plaintiff-Appellee,**

**United States of America, Plaintiff-Intervenor-Appellee,**

v.

**TOWNSHIP OF STERLING, MACOMB COUNTY, MICHIGAN, William Kerner, its Treasurer, Defendants-Appellants.**

**CHRYSLER CORPORATION, a Delaware Corporation, Plaintiff-Appellee,**

**United States of America, Plaintiff-Intervenor-Appellee,**

v.

**TOWNSHIP OF STERLING, MACOMB COUNTY, MICHIGAN, William Kerner, its Treasurer, County of Macomb, a County of the State of Michigan, and Utica Community School District, a School District of the State of Michigan, Defendants-Appellants.**

**CHRYSLER CORPORATION, a Delaware Corporation, Plaintiff-Appellant,**

**United States of America, Plaintiff-Intervenor-Appellant,**

v.

**TOWNSHIP OF STERLING, MACOMB COUNTY, MICHIGAN, William Kerner, its Treasurer, County of Macomb, a County of the State of Michigan, and Utica Community School District, a School District of the State of Michigan, Defendants-Appellees.**

Nos. 18393, 18399.

United States Court of Appeals
Sixth Circuit.
March 31, 1969.

Berrien C. Eaton, Jr., Detroit, Mich., for Township of Sterling, Macomb Co., Mich., Miller, Canfield, Paddock & Stone, Berrien C. Eaton, Jr., Wolfgang Hoppe, Samuel J. McKim, III, Robert E. Gilbert, Detroit, Mich., on brief.

Patrick J. Ledwidge, Detroit, Mich., for Chrysler Corp., Dickinson, Wright, McKean & Cudlip, Patrick J. Ledwidge, Herbert G. Sparrow, III, Detroit, Mich., on brief.

Stuart R. Smith, Dept. of Justice, Washington, D. C., for United States, Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, William A. Friedlander, Stuart A. Smith, Attys., Dept. of Justice, Washington, D. C., Lawrence Gubow, U. S. Atty., Detroit, Mich., of counsel.

William D. Dexter, Lansing, Mich., for amicus curiae—Dept. of Treasury of Michigan, Frank J. Kelley, Atty. Gen., Robert A. Derengoski, Sol. Gen., Lansing, Mich., on brief.

Before WEICK, Chief Judge, and PHILLIPS and COMBS, Circuit Judges.

PHILLIPS, Circuit Judge.

The Court is asked in these consolidated cases to declare unconstitutional a Michigan statute which has been upheld twice by the Supreme Court of the United States and three times by the Supreme Court of Michigan.[1]

The statute in question is Mich.Comp. Laws 1948, §§ 211.181, 211.182, Pub. Acts 1953, No. 189, M.S.A. (1960) §§ 7.7(5) and 7.7(6). It is referred to in this opinion as "the statute" or "Act 189." The legislation is before this

---

1. United States v. City of Detroit, 355 U.S. 466, 78 S.Ct. 474, 2 L.Ed.2d 424, affirming 345 Mich. 601, 77 N.W.2d 79; United States v. Township of Muskegon, 355 U.S. 484, 78 S.Ct. 483, 2 L.Ed.2d 436, affirming Township of Muskegon v. Continental Motors Corp., 346 Mich. 218, 77 N.W.2d 799; and Rockwell Spring & Axle Co. v. Romulus Township, 365 Mich. 632, 114 N.W.2d 166.

Court as it existed prior to an amendment added by Mich.Pub.Acts 1962, No. 226, effective March 28, 1963, and is as follows:

"§ 7.7(5) Taxation of exempt real property used privately in connection with business conducted for profit; exceptions.] When any real property which for any reason is exempt from taxation is leased, loaned or otherwise made available to and used by a private individual, association or corporation in connection with a business conducted for profit, except where the use is by way of a concession in or relative to the use of a public airport, park, market, fair ground or similar property which is available to the use of the general public, shall be subject to taxation in the same amount and to the same extent as though the lessee or user were the owner of such property: Provided, however, That the foregoing shall not apply to federal property for which payments are made in lieu of taxes in amounts equivalent to taxes which might otherwise be lawfully assessed or property of any state-supported educational institution.

"§ 7.7(6) [Same; manner of assessment and collection; taxes not to become lien; recovery in assumpsit.] Taxes shall be assessed to such lessees or users of real property and collected in the same manner as taxes assessed to owners of real property, except that such taxes shall not become a lien against the property. When due, such taxes shall constitute a debt due from the lessee or user to the township, city, village, county and school district for which the taxes were assessed and shall be recoverable by direct action of assumpsit."

The United States Government, through its Department of the Army, during all times relevant in this litigation owned 314 acres of land and the buildings, machinery and equipment affixed thereto, known as the Michigan Ordnance Missile Plant located in Sterling Township, Macomb County, Michigan. Pursuant to contracts between it and the United States, Chrysler Corporation (Chrysler) during the tax years here involved, 1960–63, occupied and used part of the Missile Plant in the manufacture of weapons for the Department of the Army. All the production and other work at the Missile Plant during the tax years at issue was for the United States.

By authority of Act 189 appellant Township of Sterling annually assessed Chrysler for the tax years 1960, 1961, 1962 and 1963 on account of its use and occupancy of the plant. The assessed taxes for each year were as follows: 1960—$373,088.69; 1961—$284,031.40; 1962—$233,230.43; and 1963—$233,662.-50.

Chrysler paid the taxes under protest, conforming strictly with all Michigan procedural requirements which are prerequisite to litigation, and filed separate refund suits for each tax year. The four suits were consolidated for trial. The United States was permitted to intervene as plaintiff, because under its contract with Chrysler it is obligated to reimburse Chrysler for the taxes in issue. The burden of the taxes fell upon the United States although the legal incidence was on Chrysler.

The District Court held Act 189 invalid under the Constitution of the United States as applied to Chrysler and the United States and therefore that Chrysler and the United States were entitled to recover the taxes sued for. The Township of Sterling appeals. The Michigan Department of Treasury was granted leave to file a brief and to participate in the oral argument as Amicus Curiae. The District Court also allowed recovery of interest at five per cent from the date of judgment.[2]

---

2. Chrysler and the United States also have appealed from the judgments insofar as they failed to provide for recovery of interest on the tax funds from the date of payment to the date of judgment. In view of our disposition of the case we do not reach the questions raised on the appeals of Chrysler and the United States.

■ We hold that Act 189 is a constitutional statute, that the taxes sued for were legally assessed and collected by the Township, and that the judgment of the District Court must be reversed.

The District Court held that the statute discriminates against the United States and in favor of the State of Michigan in a manner forbidden by the decision of the Supreme Court in Phillips Chemical Co. v. Dumas Independent School District, 361 U.S. 376, 80 S.Ct. 474, 4 L.Ed.2d 384, rehearing denied, 362 U.S. 937, 80 S.Ct. 749, 4 L.Ed.2d 751, and confirmed in Moses Lake Homes, Inc. v. Grant County, 365 U.S. 744, 81 S.Ct. 870, 6 L.Ed.2d 66, rehearing denied, 366 U.S. 947, 81 S.Ct. 1671, 6 L.Ed.2d 858.

· The statute contains three exemptions. It does not apply: (1) to "property of any state-supported educational institution;" (2) to any use which is in the nature of "a concession in or relative to the use of a public airport, park, market, fair ground or similar property;" or (3) to "federal property for which payments are made in lieu of taxes in amounts equivalent to taxes." These three exemptions were in the statute at the time its validity was upheld in the two opinions of the Supreme Court of the United States and the three opinions of the Supreme Court of Michigan. (See n. 1, *supra*).

At the outset it should be made plain that this Court agrees with the District Court on three holdings: (1) the express finding of fact made by the District Judge that discrimination against the United States in the administration of the statute by State and local officials has not been established by Chrysler and the United States; (2) that the 1962 amendment to Act 189 has no application in the present cases; and (3) that the concessions exemption standing alone does not result in unconstitutional discrimination against the United States.

The decision of the District Court holding the statute to be unconstitutional is based on two grounds: (1) the exemption in favor of lessees of state-supported educational institutions; and (2) an exemption which the District Court construed to arise from the interaction of Act 189 and Comp.Laws 1948, §§ 211.581, 211.582, Chapter 116, Mich.Pub.Acts 1917, as amended,[3] when coupled with the education and concessions exemptions. Under the latter statute the State of Michigan made contributions during the years here involved to local govern-

---

3. M.S.A. (1960) §§ 7.871, 7.872:

"§ 7.871 Tax on state tax homestead, swamp and department of conservation lands; exceptions, payment, apportionment.]

On the first day of December 1956 and on the first day of December in each and every year thereafter, there shall be paid into the treasury of each county in this state in which may be located any state tax homestead or state swamp lands under the control and supervision of the department of conservation, and any and all other lands held by the department of conservation, except that any state game farm, and any state park, for which a caretaker is provided, shall be exempt from the provisions of this act up to 1,000 acres, a tax of 15 cents per acre, or major portion thereof, of all such lands as shall belong to the state on the first day of December in each year, which tax shall be in lieu of all other taxes now levied against such state land under any existing law. The auditor general shall make a detailed statement of account be-

tween the state and each county in which such lands are situated, which shall include the descriptions of such lands, and render the same to the county treasurer of each such county; and draw a warrant on the state treasurer payable for such amount as is shown to be due such county. The county treasurer of each county shall forthwith make up a detailed statement of the account between the county and each township and school district, prorating said amount received by the county among the different townships and school districts, according to the number of acres of such lands located in each township and school district. The amount shall be further prorated in each township and school district, according to the amount of township and school taxes levied in such township and school district during the preceding year not including, however, taxes levied for state and county purposes. The county treasurer shall forthwith issue his warrant to each of said townships and school districts according to said statement.

ments in lieu of other taxes at the rate of fifteen cents per acre upon state-owned conservation lands.

We disagree with the District Court on both of these two latter issues.

## THE EXEMPTION OF MICHIGAN STATE-SUPPORTED EDUCATIONAL INSTITUTIONS

In Phillips Chemical Co. v. Dumas Independent School District, 361 U.S. 376, 80 S.Ct. 474, the Supreme Court struck down as discriminatory a Texas statute which on its face differed substantially from Act 189. The Texas statute operated so as to single out for taxation users of tax-exempt federally-owned property. Unlike the situation in Michigan, a separate Texas statute imposed a distinctly lesser tax burden on similarly situated lessees of exempt property owned by the State of Texas or its political subdivisions. The Supreme Court held that the tax imposed by a Texas School District upon the lessee of property owned by the United States and leased under the Military Leasing Act of 1947 was unconstitutional, saying: "it does not seem too much to require that the State treat those who deal with the Government as well as it treats those with whom it deals itself." In commenting upon its two earlier decisions in the Michigan cases (See n. 1, *supra*), the Court said:

"Nevertheless, it is claimed that the classification here is supported by our decision in United States v. City of Detroit, *supra*, because of the assertedly similar nature of the classification created by the statute involved in that case. The Michigan statute, although applicable generally to lessees of ex-empt property, contained an exception for property owned by state-supported educational institutions. Appellee's argument, essentially, is that the exemption of lessees of school-owned property from the Michigan statute supports the imposition here of a heavier tax on federal lessees than is imposed on lessees of other exempt public property, in general.

"This argument misconceives the scope of the Michigan decisions. In those cases we did not decide—in fact, we were not asked to decide—whether the exemption of school-owned property rendered the statute discriminatory. Neither the Government nor its lessees, to whom the statute was applicable, claimed discrimination of this character. Since the issue was not raised, the basis for the separate classification of property owned by schools was not examined. Therefore, the Michigan cases shed no light on the classification problem here."

This quotation refers to the exemption of lessees of state-supported educational institutions contained in Act 189.

It is to be emphasized that the statutory exemption of state-supported educational institutions already was a part of Act 189 at the time the *City of Detroit* and *Township of Muskegon* decisions were rendered by the Supreme Court in 1958. The Solicitor General appeared as counsel for the United States in both of these cases attacking the constitutionality of Act 189 but did not attach enough significance to the exemption of state-supported educational institutions to include it as a ground of attack upon the statute.

"§ 7.872 Same: duty of department of conservation; records, source of payment. The department of conservation shall enter upon their records against each description of said lands the amounts provided by this act and shall certify the same to the auditor general, who shall draw his warrant on the state treasurer therefor, the tax on state homestead and state swamp lands under the control of the department of conservation to be paid out of any moneys in the general fund not otherwise appropriated; and the tax on any and all other lands held by the department of conservation, except any state park, for which a caretaker is provided, shall be exempt from the provisions of this act up to one thousand [1000] acres, to be paid from moneys in the game protection fund. Such amounts shall be forwarded by the department of conservation to the county treasurers."

We now proceed to consider whether this exemption renders Act 189 unconstitutionally discriminatory against the lessee of the United States. The question which we are called upon to answer on this appeal, as posed in *Phillips*, is this: whether the discrimination created by this exemption in favor of state-supported educational institutions can be justified (361 U.S. at 382, 80 S.Ct. 474). In making this determination we are aided by a considerable amount of evidence in the present case shedding light upon the effect of this exemption upon the Michigan system of taxation, including stipulations of fact and numerous exhibits thereto filed as evidence, and by the testimony of Dr. John A. Hannah, President of Michigan State University, Dr. Ira Polley, State Superintendent of Public Instruction, and Mr. Robert L. Purnell, Chairman of the Michigan State Tax Commission.

■ The term "state-supported educational institutions" is not defined in the statute. Leaders in the field of education and other government officials of Michigan construe these words to be limited to institutions which have no separate taxing powers, and not to apply to community colleges. It is stipulated that the term includes the University of Michigan, Michigan State University, Eastern Michigan University, Western Michigan University, Wayne State University, Northern Michigan University, Central Michigan University, Michigan Technological University, and a few smaller state-supported universities and colleges. We hold, adopting as correct the interpretation followed by leaders in the field of education and other government officials of Michigan, that the number of state-supported educational institutions that could qualify for the Act 189 exemption during the tax years in question

does not exceed ten universities and colleges, and that properties leased by them to private businesses within the meaning of Act 189 are minimal.[4] Some of these institutions did not lease any Act 189 property during any of the tax years in question.

Act 189 originated as a bill introduced in the Michigan House of Representatives in January 1953 as House Bill No. 46 under the title "A bill to provide for the taxation of lessees and users of tax-exempt property." As originally introduced the bill did not contain an exemption of property of state-supported educational institutions. This exemption was added in the Senate because of a request made by a representative of the University of Michigan before the Senate Committee which was considering this proposed legislation. The University of Michigan is a separate corporate entity.[5] Prior to the enactment of Act 189, Willow Run Airport had been conveyed by the United States to the University of Michigan for a consideration of one dollar but upon condition that it be maintained for public airport purposes. The representative of the University of Michigan who appeared as witness before the Senate Committee was uncertain as to the effect of the proposed legislation upon the Willow Run property leased by the University.[6] He also was apprehensive that if a tax should be imposed upon users of University property, it might have the effect of discouraging future gifts and bequests of property to the University, such as the Graystone Ballroom in Detroit, which the University had received by gift.

It is a fair inference from the record before us that the purpose of the Michigan Legislature in amending the bill so as to include this statutory exemption was to avoid discouraging gifts and be-

4. It is of no consequence in the present litigation whether Act 189 applies to the Michigan Rehabilitation Institute, the School for the Deaf, and the School for the Blind. No Act 189 property is owned by any of these three state-supported schools.

5. Mich.Const. Art. VIII, § 5 (1963), and Mich.Const. Art. XI, §§ 3, 4 and 5 (1908).

6. For more detailed facts concerning the Willow Run Airport see Appendix A, paragraph 6.

quests to the endowments of state-supported educational institutions. The Legislature also was concerned about the possible tax effect upon the University of Michigan as grantee of the Willow Run Airport from the United States. There is no showing on the record before us of any legislative purpose to discriminate against the United States in favor of state-supported educational institutions.

In Rockwell Spring & Axle Co. v. Romulus Township, 365 Mich. 632, 114 N. W.2d 166, the Supreme Court of Michigan held that a hangar at the Detroit-Wayne Airport, owned by Wayne County and leased to a private corporation for business purposes, was subject to taxation under Act 189. The contention was made by the taxpayer that Act 189 was discriminatory and unconstitutional because of the exemption of property owned by state-supported educational institutions. The taxpayer complained that if the hangar in question had been located at Willow Run Airport, it would have been tax-exempt under Act 189 because owned by the University of Michigan.

In upholding the validity of the exemption of state-supported educational institutions, the Supreme Court of Michigan in an unanimous opinion said:

> "The exemption in the instant case with reference to property devoted to the purposes of State-supported educational institutions may not be regarded as fanciful or arbitrary.
>
> \* \* \* \* \* \*
>
> "The reasons for the exemption of State-owned property from taxation are too obvious to require discussion. In the instant case it is apparent that the exemption of the taxation of the use of such property is conducive to the welfare of the general public as well as to the benefit of the particular educational institution involved. What the legislature has done in the enactment of Act No. 189 is to reasonably extend the exemption recognized in the general tax law of the State with reference to the property devoted to the purposes of the university.

\* \* \* \* \* \*

> "In the enactment of P.A.1953, No. 189, the legislature did not exceed its authority. There is no basis for any claim that the exemption of which appellant complains was unreasonable or designed to discriminate as between taxpayers similarly situated. The claims of constitutional infringement because of the exemption in favor of State-owned property, and of those exercising rights of user under contractual arrangements, are lacking in substantial merit. The statute in question here is not invalid because of lack of uniformity in taxation or on the theory of a denial of the equal protection of the laws." 365 Mich. at 639, 640, 642, 114 N.W.2d at 169, 170.

One of the stipulations of fact in the record relating to the University of Michigan is as follows:

> "(1) The University generally tries to acquire only property which it can use for University purposes. The University has never given donors any reason to expect that a commercial or business use would be maintained on the donated property. Occasionally property received by the University has a lease or business use on it, but the University tries to dispose of it or convert it to school purposes as soon as possible."

▇ The principal properties owned by the University of Michigan shown by the record to be leased for private business purposes, including the Willow Run Airport, and such properties owned and leased by Michigan State University and other state-supported universities and colleges are described in Appendix A. We find no evidence in the record of any other Act 189 real estate owned by state-supported educational institutions and leased to or used by private individuals or firms in connection with a business conducted for profit other than the properties listed in Appendix A.

It is stipulated that the total value of taxable real estate in Michigan is approximately $50 billion; that approxi-

mately $25 billion of real estate in Michigan is tax exempt; and that the total value of real estate owned by state-supported universities and colleges is approximately one and one-half billion dollars. These figures, together with the description of properties in Appendix A, demonstrate that the amount of Act 189 property owned by state-supported universities and colleges is infinitesimal by comparison. We therefore conclude that this exemption in its practical operation does not operate to discriminate against lessees of the United States.

■ We further hold that the exemption of the lessees of property of state-supported educational institutions is reasonable and valid because it is founded upon the well recognized policy of both the United States and the State of Michigan to protect, promote and support education, including colleges and universities. The involvement of the United States along with the States with direct financing of institutions of higher learning completely dispels the contention that the exemption of Michigan state-supported universities and colleges under Act 189 constitutes an unjustifiable discrimination against the United States and its lessees.

Except for armed services academies there have been very few if any federal institutions of higher learning since the founding of the Republic.[7] The Constitutional Convention rejected the proposal of Charles Pinckney that Congress be empowered "to establish a University, in which no preferences or distinctions should be allowed on account of religion."[8]

The testimony of Dr. Hannah and Dr. Polley emphasizes the national importance of colleges and universities. The nation's public educational system of higher learning has consisted of various State institutions from the early years of the founding of the Republic. Federal support of State colleges and universities has increased with the passage of time, particularly in the post-sputnik years.

The Northwest Ordinance, adopted in 1787 for the government of the Northwest Territory, contained in Article III the following declaration of policy. "Religion, morality and knowledge being necessary to good government and the happiness of mankind, schools and the means of education shall forever be encouraged." This mandate has been echoed both in Art. XI, § 1 of the Michigan Constitution of 1908 and in Art. VIII, § 1 of the present Constitution adopted in 1963. Upon the admission of Michigan to the Union, extensive federal lands were granted to the State for school and university purposes.[9] In 1855, pursuant to Art. XIII, § 11 of the 1850 Michigan Constitution, the Michigan Legislature set aside certain lands for an agricultural college which now is Michigan State University. This institution was a precursor of the land grant colleges founded under the Morrill Act of 1862.[10] Michigan State University has been a beneficiary of the Morrill Act since 1863, and its President testified that it has been federally related since that date.

During 1964 the University of Michigan received more financial support from the United States than from the State of Michigan. It is stipulated that in 1963 the ten state-supported colleges and universities in Michigan received $79,-431,560 in federal funds.

Introduced into evidence is the second edition of "Federal Role in Education," published in 1967 by the Congressional Quarterly Service. Included in the publication is a table prepared by the United States Office of Education showing federal funds allocated to higher education in the various states from 1945 through 1967, which is attached hereto as Appendix B.

7. Howard University at Washington, D. C., is supported in part by Congressional appropriations.

8. Bowen, Miracle at Philadelphia (1966) 249.

9. Accepted by Michigan Laws of 1836, p. 57 (July 25, 1836).

10. Act of July 2, 1862, Ch. 130, 12 Stat. 503.

In view of the extent to which the Federal Government is involved in direct financing of the educational institutions exempted under Act 189, we hold that this exemption does not discriminate unconstitutionally against the United States or its lessees.

We reiterate our agreement with the District Court's finding of fact that no discrimination against the United States in the administration of Act 189 is shown under the record in these cases.

## GRANTS TO MICHIGAN COUNTIES IN LIEU OF TAXES ON STATE-OWNED CONSERVATION LANDS

Under Chapter 116, Mich.Pub.Acts of 1917, as amended, M.S.A. §§ 7.871, 7.872 (See n. 3, *supra*), the State makes a contribution to counties in lieu of taxes on State-owned conservation lands. During the tax years involved in this case the rate of payment was fifteen cents per acre. More recently the rate of contributions was increased by the Michigan Legislature to twenty cents per acre.

The District Court held that by the interworking of Act 189 and Act 116, a statutory pattern is created which is unconstitutionally discriminatory against the United States. To support this conclusion the District Court reasoned that the contribution in lieu of taxes made by the State to the counties in which state-owned conservation land is located is a "tax" measured at a flat rate per acre; and that conservation lands thereby are immunized from the application of Act 189. We hold this reasoning to be fallacious.

Even though the flat rate was labeled a "tax" by the draftsman of this legislation and has been so referred to in dictum by the Supreme Court of Michigan, Perry v. Hogarth, 261 Mich. 526, 246 N.W. 214, it is not possible that it could be an ad valorem tax within the

meaning of Art. IX, § 3, of the Michigan Constitution of 1963 [11] which requires uniformity in assessment of taxes.

It is stipulated that "taxes" paid under Act 116 are generally referred to by officials of the State of Michigan as "payments in lieu of taxes." Regardless of its label, we read the conservation land statute to provide nothing more than an appropriation by the Legislature to local units of government to compensate them for a part of their loss of tax base due to the tax-exempt status of state-owned property.

Act 189 contains no exemption of lessees of conservation lands. We hold that the District Court erred in reading such an exemption into that statute.

The Attorney General of Michigan rendered an opinion on September 15, 1966, holding that state-owned conservation property subjected to the fifteen (now twenty) cent tax is liable for the tax imposed by Act 189 if leased or used by private individuals, associations or corporations in connection with a business operated for profit. We agree with the opinion of the Attorney General. A copy of his opinion is attached hereto as Appendix C.

We therefore hold that the constitutionality and application of Act 189 is not affected in any way by the statute providing for payments to local Governments of sums in lieu of State taxes on state-owned conservation lands.

## THE CONCESSIONS EXEMPTION

Earlier in this opinion we have expressed our agreement with the District Court that the exemption of "a concession in or relative to the use of a public airport, park, market, fair ground or similar property" is not unconstitutionally discriminatory against the United States. This exemption applies alike to

11. Mich.Const.1963, art. IX, § 3, comparable to Mich.Const.1908, art. X, § 3, as amended, reads in material part: "The legislature shall provide for the uniform general ad valorem taxation of real and tangible personal property not exempt by law. The legislature shall provide for the

determination of true cash value of such property; the proportion of true cash value at which such property shall be uniformly assessed, which shall not, after January 1, 1966, exceed 50 percent; and for a system of equalization of assessments. * * * "

State and Federal property and does not discriminate against the latter. We hold this classification reasonable and valid. Marquardt Corp. v. Weber County, Utah, 360 F.2d 168, 172 (10th Cir.).

## PHILLIPS CHEMICAL CASE NOT CONTROLLING

Phillips Chemical Co. v. Dumas Independent School District, 361 U.S. 376, 80 S.Ct. 474, which is the basis of the decision of the District Court, held that an unjustifiably discriminatory Texas statute was unconstitutional because it imposed a higher tax on lessees of federal property than was imposed by a different statute on lessees of property owned by the State of Texas or its political subdivisions.

In United States v. City of Detroit, 355 U.S. 466, 473, 78 S.Ct. 474, 478, the Supreme Court said:

"It still remains true, as it has from the beginning, that a tax may be invalid even though it does not fall directly on the United States if it operates so as to discriminate against the Government or, those with whom it deals. Cf. M'Culloch v. Maryland, 4 Wheat. (17 U.S.) 316 [4 L.Ed. 579]. But here the tax applies to every private party who uses exempt property in Michigan in connection with a business conducted for private gain. Under Michigan law this means persons who use property owned by the Federal Government, the State, its political subdivisions, churches, charitable organizations and a great host of other entities. The class defined is not an arbitrary or invidiously discriminatory one."

The force and effect of the *City of Detroit* and *Township of Muskegon* cases is not weakened in any way by *Phillips Chemical*. The Michigan cases were cited with approval in the more recent decision in United States v. Boyd, 378 U.S. 39, 44, 84 S.Ct. 1518, 1521, 12 L.Ed.2d 713, in which the Supreme Court said:

"The Constitution immunizes the United States and its property from taxation by the States, M'Culloch v. Maryland, 4 Wheat. (17 U.S.) 316

[4 L.Ed. 579], but it does not forbid a tax whose legal incidence is upon a contractor doing business with the United States, even though the economic burden of the tax, by contract or otherwise, is ultimately borne by the United States. James v. Dravo Contracting Co., 302 U.S. 134, 58 S. Ct. 208, 82 L.Ed. 155; Graves v. New York ex rel. O'Keefe, 306 U.S. 466, 59 S.Ct. 595, 83 L.Ed. 927; Alabama v. King & Boozer, 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3. Nor is it forbidden for a State to tax the beneficial use by a federal contractor of property owned by the United States, even though the tax is measured by the value of the Government's property, United States v. City of Detroit, 355 U.S. 466, [78 S.Ct. 474, 2 L.Ed.2d 424], and even though his contract is for goods or services for the United States. Curry v. United States, 314 U.S. 14, 62 S.Ct. 48, 86 L.Ed. 9; Esso Standard Oil Co. v. Evans, 345 U.S. 495, 73 S.Ct. 800, 97 L.Ed. 1174; United States v. Township of Muskegon, 355 U.S. 484, [78 S.Ct. 483, 2 L.Ed.2d 436]. The use by the contractor for his own private ends—in connection with commercial activities carried on for profit —is a separate and distinct taxable activity."

 Under the decisions cited in the foregoing quotation, the validity of the taxes imposed in the present cases is not affected by the fact that the tax burden ultimately falls upon the United States. Congress undoubtedly has the authority to exempt federal contractors from taxation when the ultimate burden of the tax falls upon the United States. Carson v. Roane-Anderson Co., 342 U.S. 232, 72 S.Ct. 257, 96 L.Ed. 257. Congress has not seen fit to enact such an exemption for such contractors as Chrysler, but to the contrary has expressly repealed the exemption formerly contained in the Atomic Energy Commission Act. United States v. Boyd, *supra*, 378 U.S. 39, 84 S. Ct. 1518.

 The brief of Chrysler and the United States presents as their "sole argument" that "the various exemptions in

the Michigan statutory pattern discriminate against the United States and its contractor." We hold that whatever discrimination is shown in the record before us is justified within the meaning of Phillips Chemical Co. v. Dumas Independent School District, *supra*, 361 U.S. at 382, 80 S.Ct. 474.

A state cannot constitutionally levy a tax directly against the Government of the United States or its property without the consent of Congress. McCulloch v. Maryland, 4 Wheat. (17 U.S.) 316; Van Brocklin v. Tennessee, 117 U.S. 151, 6 S.Ct. 670, 29 L.Ed. 845. However, the constitutional immunity of the United States does not shield private parties with whom the federal Government does business from nondiscriminatory State and local taxes imposed upon them even though part or all of the financial burden eventually falls upon the United States. United States v. Boyd, *supra*, 378 U.S. 39, 84 S.Ct. 1518; United States v. City of Detroit, *supra*, 355 U.S. 466, 78 S.Ct. 474; United States v. Township of Muskegon, *supra*, 355 U.S. 484, 78 S.Ct. 483; Esso Standard Oil Co. v. Evans, 345 U.S. 495, 73 S.Ct. 800; Curry v. United States, 314 U.S. 14, 62 S.Ct. 48; James v. Dravo Contracting Co., 302 U.S. 134, 58 S.Ct. 208.

Reversed and dismissed.

[Dissenting opinion of Chief Judge Weick follows Appendices A, B and C.]

### APPENDIX A

### PROPERTY LEASED BY STATE-SUPPORTED UNIVERSITIES AND COLLEGES [12]

1. The University of Michigan received under the will of a former regent in 1926 a house at 86 Eliot Street, Ann Arbor, specifying that it was "subject to the use of such room or rooms as shall be required by the Prismatic Club and its members." Since December 1, 1961, the Prismatic Club, an exempt non-profit cultural society, has occupied the entire premises at a rental of $3,000 per year plus maintenance. Prior to 1961 the part not used by the Prismatic Club was leased by its caretaker under a written lease for two years at a monthly rental of $80. The entire property is carried on the University's books at a value of $10,000.

2. The land on which stands the Graystone Ballroom, 4235–55 Woodward Street, Detroit, was acquired by the University of Michigan partly by gift in 1894 and partly by purchase in 1903. There were a succession of ground leases during the term of which a sub-lessee many years ago constructed the present five-story building. In 1957 the then tenant was evicted for nonpayment of rent and on December 1, 1959, the property was leased at $1,500 monthly for a term expiring July 1, 1962, to an individual who used it as a dance hall and skating rink. The lease contained a $110,000 purchase option. This option was exercised in 1962 and the purchaser defaulted. In July 1963 the property was sold on a land contract for $113,306.78 and accordingly is now back on the tax rolls.

3. Vacant land at 2438–50 Woodward Avenue, Detroit, which was acquired by gift by the University of Michigan in 1942, was rented at $250 monthly as a parking lot. This property was sold in April 1964 for $32,000.

4. On January 22, 1940, Mrs. Mary A. Rackham gave certain valuable securities to the Regents of the University of Michigan and to the Rackham Engineering Foundation for the purpose of purchasing land adjacent to the Rackham Building on Woodward Avenue in Detroit. It was specified by the donor that part of the building would serve as headquarters for the Engineering Society of Detroit and part would house the activities of the Horace H. Rackham School of Graduate Studies. Part of this property was subject to a bowling alley lease. This lease ultimately was acquired in 1959 out of funds advanced by the donor. In 1960 the bowling alley was torn down and the premises were landscaped as a part of

---

12. Some of the property described in this Appendix obviously is not Act 189 property.

the Rackham Memorial. The excess funds were paid to the Rackham Foundation in 1960.

5. The University of Michigan owns an undivided interest in two buildings on Woodward Avenue in Detroit which never have been removed from the tax rolls. The book value of the University's interest in these two properties is $49,625. The taxes are paid on all this property by the long-term lessees.

6. The Willow Run Airport was conveyed by the United States to the University of Michigan by quitclaim deeds in 1947 and 1949 for a consideration of $1.00 but upon the express condition that it be maintained for public airport purposes. Sometime after World War II the University was either engaged, or about to become engaged, in a rather extensive research project for the United States Air Force having to do with ground defense against missiles. The federally-owned Willow Run Airport had been declared surplus. The Air Force wanted the University to have this property for research and at the same time to assure its continued operation as a public airport. The property included some 400,-000 square feet of space in various hangars which the University needed for purposes of research. The University preferred to acquire only the research facilities but accepted the airport also because the Air Force so preferred. After the University acquired Willow Run, it entered into an arrangement with a corporation representing various airlines to lease and maintain the airport premises and share in certain expenses. The University used the annual rentals, which usually exceeded $50,000, to defray the cost of federally required maintenance, which was in addition to maintenance costs paid by the tenant.

7. Only one tract of Act 189 property is shown to be owned by Michigan State University, and partial taxes on this property were paid voluntarily by the University. In 1939 the University acquired by will some land and a building in Lansing which already was leased to W. T. Grant Company. In 1952 the lessee decided that it needed more space.

Grant negotiated a lease with the private owner of adjacent property. The old buildings then were razed and a new one erected on the land of both Michigan State University and the adjacent owner. A new lease was negotiated in 1953 between the University and Grant. The University's portion of the building is approximately the north two-thirds.

The lease on this property will expire in 1985. The annual ground rent is $13,-000. In addition there is a factor for amortization of the building, which is approximately $25,000 a year. There also is a provision for overages based on sales volumes, but to date there have been no such overages. Under the terms of the lease the University is responsible for all taxes and assessments on its portion of the land and building. Since 1939 the Board of Trustees of the University has elected to make an annual voluntary payment of city taxes to Lansing, measured by the proportion of taxes that would be paid for police and fire protection if the premises were not tax exempt. The current cash value of the University's interest in this property is approximately $475,000.

8. Wayne State University is shown to own only a few pieces of leased property, including: a brick building worth $35,000 which is leased month to month as the headquarters of Luther House, a campus religious organization; a fraternity house leased to a student fraternity; two apartment buildings and garage leased mostly to students on a month-to-month basis; and small parcels rented on a month-to-month basis for various commercial purposes. These properties were acquired for educational and research use, but pending such use or razing have been leased on a temporary basis.

9. The Grand Valley State College during two tax years owned a warehouse valued at $100,000 which was donated to the college in 1961 by the Kroger Company.

10. Eastern Michigan University is shown to have owned houses valued at $126,000. Central Michigan University

owned houses valued at from $88,900 to $126,800. Michigan Technological University owned houses for three of the tax years valued at $41,900 to $109,700. Northern Michigan University owned houses for two of the tax years valued at $500. All these houses were rented for personal residences on a month-to-month basis pending razing. Michigan Technological University also owned ten acres of land which was leased to the United States Forest Service for a research facility.

From our examination of the record it appears that none of the property mentioned in this paragraph is Act 189 property.

11. It is stipulated that certain colleges and universities also lease or otherwise make available certain small portions of their premises for barber shops or other service facilities, such as laundries and food concessions, operated by private individuals for profit.

## APPENDIX B

### FEDERAL FUNDS FOR HIGHER EDUCATION, 1945-67

(Amounts in millions)

| Fiscal | Research and development | Student assistance | Veterans education | Facilities | Other |
|---|---|---|---|---|---|
| 1945 | $ 112.0 | $ 5.0 | $ 10.7 | | $ 31.1 |
| 1946 | 65.5 | 5.0 | 237.0 | $ 0.2 | 19.2 |
| 1947 | 64.1 | 5.8 | 1,387.0 | 1.4 | 19.7 |
| 1948 | 60.5 | 6.2 | 1,701.0 | 2.2 | 23.4 |
| 1949 | 76.8 | 7.0 | 1,821.2 | 1.0 | 18.2 |
| 1950 | 82.3 | 7.5 | 1,721.0 | 5.7 | 18.3 |
| 1951 | 143.5 | 10.5 | 1,272.1 | 18.7 | 17.1 |
| 1952 | 151.2 | 17.0 | 854.0 | 25.7 | 16.1 |
| 1953 | 150.4 | 25.0 | 436.1 | 53.0 | 15.7 |
| 1954 | 140.9 | 34.0 | 352.9 | 48.4 | 9.5 |
| 1955 | 140.0 | 45.0 | 423.2 | 52.3 | 17.4 |
| 1956 | 171.8 | 48.0 | 483.0 | 196.1 | 19.5 |
| 1957 | 219.1 | 61.0 | 484.1 | 251.7 | 44.5 |
| 1958 | 282.0 | 76.0 | 434.7 | 272.7 | 42.2 |
| 1959 | 355.9 | 181.8 | 363.3 | 183.6 | 26.6 |
| 1960 | 449.0 | 238.9 | 248.6 | 296.8 | 36.0 |
| 1961 | 539.8 | 310.2 | 160.9 | 389.5 | 49.2 |
| 1962 | 802.1 | 376.9 | 102.9 | 296.1 | 58.7 |
| 1963 | 855.3 | 458.8 | 68.4 | 560.3 | 110.2 |
| 1964 | 1,010.5 | 563.0 | 52.7 | 504.8 | 135.8 |
| 1965 | 1,178.0 | 713.5 | 27.0 | 991.8 | 284.1 |
| 1966 | 1,350.1 | 1,037.3 | 30.6 | 1,210.9 | 384.4 |
| 1967 | 1,430.0 | 1,095.2 | 234.1 | 1,376.1 | 464.8 |

Source: Congressional Quarterly Service, *Federal Role in Education* 4 (2d ed. 1967).

**APPENDIX C**

STATE OF MICHIGAN OFFICE OF
THE ATTORNEY GENERAL
LANSING, MICHIGAN

September 15, 1966

Dr. Ralph A. MacMullan
Director, Department of Conservation
Stevens T. Mason Building
Lansing, Michigan

Dear Dr. MacMullan:

Your recent letter of inquiry asked whether or not the "tax" of 20 cents per acre paid in respect of certain lands held by the Department of Conservation out of the general fund and the game protection fund [C.L. '48 §§ 211.581 and 211.582; MSA §§ 7.81 and 7.82] precludes the taxation of any use of those said lands by private individuals, associations or corporations in connection with a business operated for profit under Act 189 of 1953 [C.L. '48 §§ 211.181 and 211.182; MSA §§ 7.7(5) and 7.7(6)].

More specifically, you inquire:

(1) Does the fact that the State of Michigan makes a 20 cent payment labelled a "tax" with respect to certain lands held by the Department of Conservation mean that those lands are not "real property which for any reason is exempt from taxation" for purposes of Act 189, and

(2) Does the fact that the statute authorizing the said 20 cent payment states that the so-called "tax" shall be in lieu of all other taxes now levied against such state land under any existing law" mean that those lands are not "real property which for any reason is exempt from taxation" for purposes of Act 189, or that the 20 cent so-called "tax" is to be in lieu of the tax under Act 189?

With respect to your first specific inquiry, Section 7 of the Michigan General Property Tax Law [C.L. '48 § 211.7; MSA § 7.7] specifically provides that all public property belonging to the State of Michigan, with certain exceptions not relevant here, shall be exempt from taxation. Sections 1 and 2 of that Act [C.L. '48 §§ 211.1 and 211.2; MSA §§ 7.1 and 7.2] provide, in effect, that all real property in the State of Michigan not expressly exempted shall be subject to taxation. Except for the specific exemption of public property belonging to the State of Michigan (which includes the lands with respect to which the 20 cent payment is made), all that property would be subject to the standard real property *ad valorem* tax imposed by the Michigan General Property Tax Law.

The language "exempt from taxation" used in Act 189 includes public real property owned by the State of Michigan, of which property that land with respect to which the 20 cent payment is made is a part, because this property is specifically exempted from the standard real property *ad valorem* tax to which it would otherwise be subject.

With respect to your second specific inquiry, the provision in the statute requiring the 20 cent payment, stating that it "shall be in lieu of all other taxes now levied against such state land under any existing law," has no bearing whatsoever upon the applicability of Act 189 to users of that property because Act 189 levies a tax on the privilege of use, not on the property itself. In effect, this "in lieu" provision merely reaffirms the exemption for public property belonging to the State of Michigan.

In sum, if the users of the state lands held by the Department of Conservation (with respect to which a 20 cent payment is made by the State) fall within the requirements of Act 189, they are subject to a privilege tax under that Act for their use of such lands.

I trust that the above will clarify our position in this matter.

Sincerely yours,
FRANK J. KELLEY
Attorney General

WEICK, Chief Judge (dissenting).

I regret that I must dissent from the majority opinion for I am of the firm belief that our decision in these appeals is not controlled by the two Michigan cases

decided by the Supreme Court in *City of Detroit*[1] and *Township of Muskegon*[2].

The thrust of the Supreme Court decision in Phillips Chem. Co. v. Dumas Independent School Dist., 361 U.S. 376, 80 S.Ct. 474, 4 L.Ed.2d 384 (1960) is that a state tax may not discriminate against the Government or those with whom it deals. *Id.* at 385 and 387, 80 S.Ct. 474. I see no basis for permitting any justification of discrimination in this area.

In *Phillips* Chief Justice Warren, who wrote the opinion for the Court, pointed out rather clearly that the two Michigan cases did not involve discrimination of the character we have here. He stated:

"Appellee's argument, essentially, is that the exemption of lessees of school-owned property from the Michigan statute supports the imposition here of a heavier tax on federal lessees than is imposed on lessees of other exempt public property, in general.

"This argument misconceives the scope of the Michigan decisions. In those cases we did not decide—in fact, we were not asked to decide—whether the exemption of school-owned property rendered the statute discriminatory. Neither the Government nor its lessees, to whom the statute was applicable, claimed discrimination of this character. Since the issue was not raised, the basis for the separate classification of property owned by schools was not examined. Therefore, the Michigan cases shed no light on the classification problem here." [Footnotes omitted] *Id.* at 386, 80 S.Ct. at 480.

He concluded:

" * * * [I]t still remains true, as it has from the time of M'Culloch v. Maryland, 4 Wheat. (17 U.S.) 316 [4 L.Ed. 579], that a state tax may not discriminate against the Government or those with whom it deals." *Id.* at 387, 80 S.Ct. at 481, citing United States v. City of Detroit, *supra*, at 473, 78 S.Ct. 474.

*Phillips* was approved and followed by the Supreme Court in Moses Lake Homes, Inc. v. Grant County, 365 U.S. 744, 81 S.Ct. 870, 6 L.Ed.2d 66 (1961). In enunciating the rule in *Moses Lake*, the Court stated:

"If anything is settled in the law, it is that a State may not discriminate against the Federal Government or its lessees. See *e. g.*, Phillips Co. v. Dumas School District, 361 U.S. 376 [80 S.Ct. 474, 4 L.Ed.2d 384]; United States v. City of Detroit, 355 U.S. 466, 473 [78 S.Ct. 474, 478, 2 L.Ed.2d 424]; City of Detroit v. Murray Corp., 355 U.S. 489 [78 S.Ct. 458, 2 L.Ed.2d 441]. In United States v. City of Detroit, *supra*, we said:

" 'It still remains true, as it has from the beginning, that a tax may be invalid even though it does not fall directly on the United States if it operates so as to discriminate against the Government or those with whom it deals.' 355 U.S., at 473, 78 S.Ct., at 478." *Id.* at 751, 81 S.Ct. at 874.

It is worth noting that in *Moses Lake* the Supreme Court felt that *Phillips* was the controlling authority. *Id.* at 751, 81 S.Ct. 870. In its discussion of *Phillips*, the Court does not even refer to the possibility of justifying a discriminatory tax.

This lack of reference to the principle of justification relied upon by the majority as an alternative holding, is understandable in view of the fact that these cases involve the problem of intergovernmental tax immunity and not the equal protection test of permissible classification. See Phillips Chem. Co. v. Dumas School Dist., *supra* at 385, 80 S.Ct. 474.

The District Court found substantial discrimination against the Government in the exemption contained in Act 189 in favor of state-supported educational institutions. In my judgment there was substantial evidence to support this finding, and it is not clearly erroneous.

1. United States v. City of Detroit, 355 U.S. 466, 78 S.Ct. 474, 2 L.Ed.2d 424 (1958).

2. United States v. Township of Muskegon, 355 U.S. 484, 78 S.Ct. 483, 2 L.Ed.2d 436 (1958).

Appellants admit that the exception of state-supported institutions applies to "13 institutions, primarily universities and four year colleges" (Reply Brief, p. 8). The aggregate value of real property held by state universities and normal schools during the tax years was $1,-470,000,000. This figure includes tax exempt properties of substantial value which were used in connection with a business for profit in 1953 when Act 189 was adopted.

The business uses to which some of the properties were put, in at least some of the tax years, included a warehouse, dance hall-skating rink, parking lot, bowling alley, public airport, and a department store.

The District Court in its opinion stated:

"* * * [A]nd all parties concede that if the Missile Plant were owned by a state university, its occupants would pay no taxes under Act 189." (254a)

Appellants attempt to justify the discrimination on the ground that the Federal Government has shown great interest in and has financially supported state educational programs. This, I submit, does not operate as an implied consent to discriminate against it in state taxation.

Nor do I regard the amount of discrimination as de minimus in practical operation. The taxes imposed, which the Government under the provisions of its lease with Chrysler must pay, amounted to over $1,000,000, in four years. Chrysler used only a portion of the plant, solely for the purpose of manufacturing weapons for the Government.

While there may be some dispute over the value of properties used for business purposes, the Government in its brief itemizes five properties of the value of about $800,000, and this does not include Willow Run Airport, which the University of Michigan acquired from the Government for the sum of one dollar, upon which no estimate of value was made.

I would affirm the judgment of the District Court with the exception of its failure to allow pre-judgment interest. In lieu of an allowance of interest I would require only an accounting of the profit made by the investment of the moneys paid under protest by Chrysler.